J-A26002-19

2020 PA Super 10

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHESTER CARR | : | |
| | : | |
| Appellant | : | No. 1538 WDA 2018 |

Appeal from the Judgment of Sentence Entered October 1, 2018
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000788-2018

BEFORE:  SHOGAN, J., LAZARUS, J., and OLSON, J.

OPINION BY SHOGAN, J.:                    **FILED JANUARY 21, 2020**

Appellant, Chester Carr, appeals from the judgment of sentence entered following his convictions of various crimes related to a drug-overdose death. We affirm.

The trial court set forth the procedural background of this case as follows:

> Appellant's charges arose on April 27, 2017, when the victim, Olivia Askins ("Askins"), purchased heroin laced with Fentanyl from Appellant and died from an overdose.  Appellant supplied the drugs and directed his 16-year old girlfriend, [J.S.], to deliver the drugs to Askins.  At the time, Appellant was incarcerated at the Erie County Prison.  However, he used the prison telephone system to dictate to [J.S.] regarding where she could find Appellant's stash of drugs, prepare the drugs for delivery, contact Askins and deliver the drugs to her.  [J.S.] drove to Askins' house and delivered the drugs per Appellant's instructions.
>
> After a two-day trial on August 13th and 14th, 2018, Appellant was convicted of all charges, as follows:

Count 1: Criminal Conspiracy (drug delivery resulting in death), 18 Pa.C.S.A. §903 (a);

Count 2: Drug Delivery Resulting in Death (Fentanyl), 18 Pa.C.S.A. §2506(a);

Count 3: Criminal Conspiracy (to deliver Fentanyl), 18 Pa.C.S.A. §903(a);

Count 4: Unlawful Delivery of a Controlled Substance (Fentanyl), 35 P.S. §780-113(a)(30);

Count 5: Possession of a Controlled Substance (Fentanyl), 35 P.S. §§780-113(a)(16);

Count 6: Possession of Drug Paraphernalia, 35 P.S. §780-113(a)(32);

Count 7: Recklessly Endangering Another Person, 18 Pa.C.S.A §2705;

Count 8: Criminal Use of a Communication Facility, 18 Pa.C.S.A. §7512(a).

On October 1, 2018, Appellant was sentenced as follows:

Count 1: Criminal Conspiracy (drug delivery resulting in death): 114 - 228 months of incarceration;

Count 2: Drug Delivery Resulting in Death: 126 to 252 months of incarceration, consecutive to Count 1;

Count 3: Criminal Conspiracy (to deliver Fentanyl): Merges with Count 1;

Count 4: Unlawful Delivery of a Controlled Substance: Merges with Count 2;

Count 5: Possession of a Controlled Substance: Merges with Count 2;

Count 6: Possession of Drug Paraphernalia: 12 months of probation, consecutive to Count 8;

Count 7: Recklessly Endangering Another Person: Merges with Count 2; and

Count 8: Criminal Use of a Communication Facility: 21-42 months of incarceration, consecutive to Count 2.

On October 3, 2018, Appellant filed a Motion to Modify Sentence/Reconsider Sentence. Appellant claimed the jury's verdict at Counts 1, 2, 4, 5, 6 and 7 should be quashed as the evidence was insufficient to convict him. Appellant challenged the weight of the evidence. Appellant attached a Petition for Writ of Habeas Corpus contending the Drug Delivery Resulting in Death statute, 18 Pa.C.S.A. §2506, is a strict liability crime. As such, Appellant cannot be charged as he did not personally deliver the drugs. The post-sentence motion was denied on October 4, 2018.

Trial Court Opinion, 12/19/18, at 1-2.

This timely appeal followed. Both Appellant and the trial court complied

with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I. WHETHER OR NOT CRIMINAL CONSPIRACY TO COMMIT A DRUG DELIVERY RESULTING IN DEATH AS DEFINED BY STATUTE IN 18 Pa.C.S.A. §903 (a) and 18 Pa.C.S.A. §2506 (a) IS A LEGALLY COGNIZABLE CRIME OR A LOGICAL IMPOSSSIBILITY.

II. WHETHER OR NOT THE COMMONWEALTH PRESENTED SUFFICIENT EVIDENCE TO PROVE THE APPELLANT'S GUILT BEYOND A REASONABLE DOUBT AS TO THE CONVICTIONS OF CRIMINAL CONSPIRACY (DRUG DELIVERY RESULTING IN DEATH), DRUG DELIVERY RESULTING IN DEATH, UNLAWFUL DELIVERY OF A CONTROLLED SUBSTANCE, POSSESSION OF A CONTROLLED SUBSTANCE, POSSESSION OF DRUG PARAPHERNALIA, AND RECKLESSLY ENDANGERING ANOTHER PERSON REGARDING THE INCIDENT THAT OCURRED ON APRIL 27, 2017.

Appellant's Brief at 5 (verbatim).

Appellant first argues that the Commonwealth charged him with a crime that is not legally cognizable, *i.e.* criminal conspiracy to commit drug delivery resulting in death. Appellant's Brief at 16-18. Appellant asserts that it is logically impossible for a person to intentionally conspire to achieve an unintended reckless result. *Id*. at 17. Upon careful review, we disagree.

As this is a question of law, our scope of review is plenary, and our standard of review is *de novo*. **Commonwealth v. Fisher**, 80 A.3d 1186, 1189 (Pa. 2013) (citing **Commonwealth v. Crawley**, 924 A.2d 612, 614 (Pa. 2007)). In considering whether conspiracy to commit a drug delivery resulting in death is a cognizable offense, we first review the relevant statutes.

The Pennsylvania Crimes Code defines conspiracy as follows:

**(a) Definition of conspiracy.—**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them **will engage in conduct which constitutes such crime** or an attempt or solicitation to commit such crime; or

> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

* * *

**(e) Overt act.—**No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S. § 903(a), (e) (emphasis added).

- 4 -

Regarding the elements of conspiracy, this Court has stated the following:

> To sustain a conviction for criminal conspiracy, the Commonwealth must establish, beyond a reasonable doubt, that: (1) the defendant entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent, and (3) an overt act was done in furtherance of the conspiracy. "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator."

**Commonwealth v. Smith**, 69 A.3d 259, 263 (Pa. Super. 2013) (citations omitted).

The drug-delivery-resulting-in-death statute provides in pertinent part as follows:

> **(a) Offense defined.**—A person commits a felony of the first degree if the person intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance.

18 Pa.C.S. § 2506(a) (footnote omitted). "The crime described above consists of two principal elements: (i) [i]ntentionally administering, dispensing, delivering, giving, prescribing, selling or distributing any controlled substance or counterfeit controlled substance[,] and (ii) death caused by ('resulting from') the use of that drug." **Commonwealth v. Kakhankham**, 132 A.3d 986, 991–992 (Pa. Super. 2015)

Regarding the *mens rea* for the first element of the offense, we explained the following:

[t]he statute is as clear and direct as a statute can be. The mental state required is "intentionally" doing one of the acts described therein, namely, administering, dispensing, delivering, giving, prescribing, selling or distributing any controlled substance or counterfeit controlled substances. Additionally, the Crimes Code defines "intentionally" as follows:

> (1) A person acts intentionally with respect to a material element of an offense when:
>
> (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and
>
> (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 Pa.C.S.A. § 302(b)(1).

Thus, under the statute, the first element of the crime is met if one "intentionally" administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substances.

*Kakhankham*, 132 A.3d at 992.

With respect to the causal relationship necessary to impose criminal liability under the statute, we opined:

> The statute uses the phrase[] "results from," a concept which is defined also in the Crimes Code. Section 303 of the Crimes Code, in relevant part, provides:
>
> **Causal relationship between conduct and result**
>
> **(a) General rule.—**Conduct is the cause of a result when:
>
> (1) it is an antecedent but for which the result in question would not have occurred; and

- 6 -

(2) the relationship between the conduct and result satisfies any additional causal requirements imposed by this title or by the law defining the offense.

18 Pa.C.S.A. § 303(a). The statute, therefore, is clear as to the level of causation. It requires a "but-for" test of causation. Additionally, criminal causation requires the results of the defendant's actions cannot be so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible.

*Kakhankham*, 132 A.3d at 992–993 (footnotes, case citations to case law and certain quotation marks omitted).

Concerning the *mens rea* requirement for the second element of Section 2506, the **Kakhankham** Court rejected an argument that the defendant must intend to cause the death of another. Specifically, we stated, "[S]uch a reading would make Section 2506 superfluous, for intentionally causing the death of another person is already criminalized (*i.e.*, first degree murder)."

*Kakhankham*, 132 A.3d at 993 (record citation omitted). The Court in **Kakhankham** went on to conclude:

Section 302(c) provides the *mens rea* requirement for the second element of Section 2506, *i.e.*, death must be at least "reckless." 18 Pa.C.S.A. § 302(c).

The Crimes Code defines "recklessly" as follows:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a

- 7 -

reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).

Additionally, when recklessly causing a particular result is an element of an offense,

the element is not established if the actual result is not within the risk of which the actor is aware or, in the case of negligence, of which he should be aware unless:

(1) the actual result differs from the probable result only in the respect that a different person or different property is injured or affected or that the probable injury or harm would have been more serious or more extensive than that caused; or

(2) the actual result involves the same kind of injury or harm as the probable result and is not too remote or accidental in its occurrence to have a bearing on the liability of the actor or on the gravity of his offense.

18 Pa.C.S.A. § 303(c).

*Kakhankham*, 132 A.3d at 995.

Regarding the dangerous nature of heroin and related opiates, the Court in *Kakhankham* observed that "[a]lthough the overwhelming majority of heroin users do not die from a single injection of the narcotic, it nevertheless is an inherently dangerous drug and the risk of such a lethal result certainly is foreseeable. … The intravenous self-administration of illegally-purchased heroin … is a modern form of Russian roulette." *Kakhankham*, 132 A.3d at 996. "One can reasonably conclude that the consumption of heroin in unknown strength is dangerous to human life, and the administering of such

- 8 -

a drug is inherently dangerous and does carry a high possibility that death will occur." ***Id***. at 996 n.14 (quoting ***Commonwealth Catalina***, 556 N.E.2d 973, 980 (Mass. 1990)). We ultimately concluded "that reckless conduct … may result in criminal liability under Section 2506." ***Id***. at 996.

In summary, the applicable *mens rea* for the crime of drug delivery resulting in death is two-fold. First, the delivery, distribution or sale of the contraband must be intentional. ***Kakhankham***, 132 A.3d at 992. Second, the actual death must be the reckless result of the actions of the defendant. ***Id***. at 995. As such, the crime is an intentional act in providing contraband, with a reckless disregard of death from the use of the contraband.

In addressing whether the crime of conspiracy to commit drug delivery resulting in death is a cognizable offense, we find instructive our Supreme Court's decision in ***Fisher***, 80 A.3d 1186, which addressed the issue of whether the crime of conspiracy to commit third degree murder is a cognizable offense. Concerning conspiracy, the ***Fisher*** Court observed that "[w]here the existence of a conspiracy is established, the law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirator or conspirators if such acts are done in pursuance of the common design or purpose of the conspiracy." ***Id***. at 1192 (quoting ***Commonwealth v. Eiland***, 301 A.2d 651, 653 (Pa. 1973)).

The Court in ***Fisher*** then offered a thorough review of Pennsylvania case law regarding conspiracy to commit third degree murder. ***Fisher***, 80 A.3d at

1191-1195. The Court ultimately held that "the absence of intent to kill does not preclude a defendant from being convicted of conspiracy to commit third degree murder." *Id*. at 1195. The Court continued as follows:

> "[t]hird degree murder is not by definition an unintentional killing; it is a malicious killing without proof that the specific result intended from the actions of the killer was the death of the victim." ... If a defendant acts with his co-conspirators in brutally attacking the victim with the intention of killing him, he conspires to commit first degree murder; if the defendant performs the same action but does not care whether the victim dies or not, he conspires to commit third degree murder. In the latter example, the defendant did not ... intend to aid an unintentional murder; rather, he intended to aid a malicious act resulting in a killing. ... Where . . . the defendant intends the underlying act . . . which results in death, the evidence supports the charge of conspiracy to commit third degree murder.

*Id*. (citation and footnote omitted).

The Court in **Fisher** went on to explain:

> The language of Pennsylvania's conspiracy statute . . . states the defendant must have "the intent of promoting or facilitating" a crime and must "engage in conduct which constitutes such crime[.]" 18 Pa.C.S. § 903(a), (a)(1). Thus, one does not conspire to commit a denominated offense; one conspires to engage in certain conduct. The fact the actors do not mention which crime such conduct will constitute does not make conspiracy to commit the offense non-cognizable. **The conspiracy is to commit the beating, which, being carried out with the mental state of malice, supports a charge of third degree murder. Accordingly, we hold conspiracy to commit third degree murder is a cognizable offense.**

*Id*. (emphasis added).

Thus, when conspiring to engage in certain conduct, conspirators need not contemplate the ultimate crime in order to be charged and convicted of conspiracy to commit that crime. In cases of conspiracy to commit third

degree murder, even when death was not the objective of the conspirators, a conviction may be upheld where the conspirators planned to assault the victim and the victim ultimately dies as a result. Likewise, with regard to conspiracy to commit drug delivery resulting in death, a drug user's death need not be the objective of the conspirators because the consequence of an overdose is a foreseeable result of the delivery, distribution, or sale of drugs to the victim. In short, the conspiracy to commit an overt act binds the conspirators to the foreseeable consequences of the conduct. Here, the conspiring parties need not specifically anticipate the death of the user of the drug. A conspiracy to commit the overt act of an **intentional drug delivery** links the conspirators to the foreseeable consequence that the drug user may die. Accordingly, the crime of conspiracy to commit drug delivery resulting in death is a cognizable crime. Hence, Appellant's claim fails.

Appellant next argues that the Commonwealth failed to present sufficient evidence to support his convictions. Appellant's Brief at 19-29. Appellant asserts that, because he was in prison at the time of the incident, he was not in possession of, and could not deliver, the drugs. *Id*. at 20. In addition, Appellant contends that the Commonwealth failed to prove that Appellant was the "but for" cause of the victim's death. *Id*. at 23-24. Finally, Appellant asserts that the Commonwealth failed to establish that the lethal

drug Fentanyl, which caused the victim's death, was present in the contraband that Appellant arranged to be sold to the victim. *Id*. at 24-29.[1]

We observe that "to preserve their claims for appellate review, appellants must comply whenever the trial court orders them to file a Statement of [Errors] Complained of on Appeal pursuant to [Rule] 1925. [As a general rule, a]ny issues not raised in a [Rule] 1925(b) statement will be deemed waived." *Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005) (quoting *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998)). "If [an appellant] wants to preserve a claim that the evidence was insufficient, then the [Rule] 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient." *Commonwealth v. Manley*, 985 A.2d 256, 262 (Pa. Super. 2009). *See also Commonwealth v. Williams*, 959 A.2d 1252, 1257-1258 (Pa. Super. 2008) (finding waiver of sufficiency of evidence claim where the appellant failed to specify in Rule 1925(b) Statement the elements of particular crime not proven by the Commonwealth).

---

[1] We note that Appellant has also filed a reply brief in this appeal, which contains additional argument pertaining to his challenge to the sufficiency of the evidence. However, it is not the purpose of a reply brief to remedy discussions of issues presented poorly in an appellant's principal brief. *Commonwealth v. Collins*, 957 A.2d 237, 256 (Pa. 2008) (noting that a reply brief cannot cure a previously waived claim); *see also* Pa.R.A.P. 2113(a) (stating the purpose of a reply brief is to respond to "matters raised by appellee's brief or in any *amicus curiae* brief and not previously addressed in appellant's brief[]"). Accordingly, we decline to consider Appellant's additional arguments.

Appellant's Rule 1925(b) statement asserts the following, in relevant part:

> 2. The Jury's Verdict should be quashed, and the sentence should be modified in that the evidence was insufficient as a matter of law to convict [Appellant] at Count 1, Count 2, Count 4, Count 5, Count 6, and Count 7.

> 3. The Jury heard the evidence that co-defendant [J.S.] was in fact the deliverer of the drugs and as such [Appellant] had nothing to do with it and therefore was insufficient as a matter of law.

Appellant's Rule 1925(b) Statement, 1/2/18, at 1. Appellant's non-specific claim challenging the sufficiency of the evidence fails to delineate which elements of which crimes were allegedly not proven by the Commonwealth. Consequently, Appellant waived this claim on appeal. *Castillo*, 888 A.2d 775; *Lord*, 719 A.2d 306; *Manley*, 985 A.2d 256.

To the extent that Appellant properly preserved for appeal his claim that there was insufficient evidence to support his convictions because he was in prison at the time and could not have been in possession of or deliver the drugs, Appellant would not be entitled to relief. We analyze arguments challenging the sufficiency of the evidence under the following parameters:

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of

- 13 -

fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

***Commonwealth v. Trinidad***, 96 A.3d 1031, 1038 (Pa. Super. 2014) (quoting

***Commonwealth v. Emler***, 903 A.2d 1273, 1276-1277 (Pa. Super. 2006)).

In addressing Appellant's allegation that the Commonwealth failed to prove that he was in physical possession of the drugs at the time of the sales, we consider the following regarding constructive possession of contraband. Where the contraband a person is charged with possessing is not found on the person of the defendant, the Commonwealth is required to prove constructive possession. ***Commonwealth v. Kirkland***, 831 A.2d 607, 611 (Pa. Super. 2003). Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. ***Commonwealth v. Parker***, 847 A.2d 745, 750 (Pa. Super. 2004). Our courts have held that constructive possession requires proof of the ability to exercise conscious dominion over the substance, the power to control the contraband and the intent to exercise such control. ***Commonwealth v. Johnson***, 920 A.2d 873, 882 (Pa. Super. 2007) (citing ***Commonwealth v. Valette***, 613 A.2d 548, 550 (Pa. 1992)) (Emphasis added).

Instantly, the trial court addressed the general sufficiency of the evidence in Appellant's case, and stated:

This case is unusual because all of the relevant conduct by Appellant and his co-defendant, [J.S.], was captured on the

recording system for telephone calls from the Erie County Prison. If there is any question about what occurred in this case, the appellate court is invited to listen to the calls recorded between Appellant and [J.S.]. The following is a summary of the salient, undisputable facts in this case.

On April 17, 2017, Appellant was detained by his probation officer for probation violations and placed in the Erie County Prison. Within hours of his arrival, Appellant was making outgoing telephone calls to [J.S.]. Noteworthy is the fact that all inmates are advised in several ways, including a large sign by the phone, that all outgoing calls are recorded.

At that time Appellant, whose date of birth is May 2, 1989, was nearly 29 years old. [J.S.], who was pregnant by Appellant, was 16 years old. Neither person had any legitimate employment. What unfolded during these calls were specific orders given by Appellant to [J.S.] on how to continue his drug dealing operation while he was incarcerated.

During his calls, Appellant directed [J.S.] to contact Olivia Askins so she could continue to buy drugs from him through [J.S.]. Appellant directed [J.S.] to go on Facebook to interact with Askins. Doing as she was told, [J.S.] contacted Askins and made arrangements to sell drugs to her. Appellant dictated to [J.S.] what to charge for certain quantities. He told [J.S.] she could find his drugs in the glove box of his black Mercedes Benz. Appellant further instructed [J.S.] to turn over the proceeds to his father for safekeeping until he could get out of jail.

The tone of voice that Appellant used in these calls was demanding; he was very much in charge of the subservient [J.S.]. She was afraid of him as he had abused her in the past. She was also in very dependent circumstances as she was carrying Appellant's child and she had no sources of revenue other than from Appellant.

[J.S.] followed all of Appellant's instructions in making a number of heroin sales to Askins. Tragically, the last sale that was made to Askins was fatal. The arrangements for this sale were made through a series of text messages which established that the drugs sold by Appellant through [J.S.] to Askins killed her. The amount of Fentanyl in Askins' system far exceeded the threshold for death.

[J.S.] testified truthfully at Appellant's trial. She admitted and explained her role in the drug sales to Askins. All of her testimony was corroborated by the recorded prison calls with Appellant. Meanwhile, Appellant repeatedly argued to the jury that he cannot be guilty because he did not touch the heroin nor deliver it to Askins. The jury rightfully rejected this bogus claim because the phone calls reveal that the actual drug dealer was Appellant. These were Appellant's drugs. He dictated how much was charged for the quantity sold to Askins. Appellant kept all of the proceeds, harboring them with his father until Appellant's release from prison. At all times [J.S.] was acting at the behest of and under the control of Appellant.

Trial Court Opinion, 12/19/18, at 3-4.

Likewise, our review of the record reflects the evidence at trial was sufficient to establish that, although Appellant did not physically handle the drugs, he was in complete control of the drug transactions. The evidence proves that J.S., in contacting and selling drugs to Askins, was acting solely at the direction of Appellant. At trial, the Commonwealth presented twenty-six audio recordings of portions of telephone conversations between Appellant and J.S., which took place while Appellant was incarcerated. Commonwealth Exhibits, 7-8, 10-33. Those recordings spanned thirteen days, covering the period between April 17, 2017, and April 30, 2017, and detailed the drug transactions that J.S. was to perform on Appellant's behalf.

Moreover, the following testimony offered by J.S. supports our conclusion that Askins died as a result of using the drugs sold by J.S. and that those drugs belonged to Appellant:

[ASSISTANT DISTRICT ATTORNEY:] Obviously in this phone call you tell [Appellant] that [Askins] has passed away, and you

indicate it must have been recently because you just saw her on Wednesday morning, correct?

[J.S.:] That's correct.

[ASSISTANT DISTRICT ATTORNEY:] And the time you're talking about having seen her, was that the last time you then sold her those drugs?

[J.S.:] Yes.

[ASSISTANT DISTRICT ATTORNEY:] And as we come to find out, she died minutes later, correct?

[J.S.:] That's correct.

* * *

[ASSISTANT DISTRICT ATTORNEY:] [J.S.], throughout the 13 days worth of phone conversations we've listened to, and throughout any of the time that you knew [Appellant], did you ever sell any of your own drugs?

[J.S.:] No.

[ASSISTANT DISTRICT ATTORNEY:] The drugs you were selling for these ten days, were those the drugs that [Appellant] had asked you to get out of the Benz and had asked you to hide for him from behind the TV?

[J.S.:] Yes.

[ASSISTANT DISTRICT ATTORNEY:] And those were the drugs that you were updating him about the sales for throughout each of these days, correct?

[J.S.:] That's correct.

[ASSISTANT DISTRICT ATTORNEY:] And those also ended up being the drugs that you sell to Olivia Askins, correct?

[J.S.:] Correct.

[ASSISTANT DISTRICT ATTORNEY:] And, obviously, as we listened to on the 17th, [Appellant] tells you specifically to look for Olivia Askins on Facebook, correct?

[J.S.:] Yes.

N.T., 8/14/18, at 107-109.

After review of the record and consideration of the evidence in the light most favorable to the Commonwealth, we conclude that the evidence establishes that, in instructing J.S., Appellant controlled the entire drug sales operation. Hence, Appellant had the ability to exercise conscious dominion over the substance, the power to control the contraband, and the intent to exercise such control is sufficient to prove that he had constructive possession of the drugs. *Johnson*, 920 A.2d at 882. Therefore, Appellant's contrary argument merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/21/2020