J-S36043-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LARRY W. SHROYER | : | |
| | : | |
| Appellant | : | No. 18 WDA 2020 |

Appeal from the Judgment of Sentence Entered December 9, 2019
In the Court of Common Pleas of McKean County Criminal Division at
No(s):  CP-42-CR-0000628-2017

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LARRY WAYNE SHROYER | : | |
| | : | |
| | : | No. 19 WDA 2020 |

Appeal from the Judgment of Sentence Entered December 5, 2019
In the Court of Common Pleas of McKean County Criminal Division at
No(s):  CP-42-CR-0000620-2017

BEFORE:  OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    FILED AUGUST 19, 2020

Larry Wayne Shroyer seeks review of two judgments of sentence entered against him by the Court of Common Pleas of McKean County (trial court) on the grounds of insufficient evidence.  After a jury trial, he was convicted of numerous drug related offenses, including the two counts now at

_____

[*] Retired Senior Judge assigned to the Superior Court.

issue: flight to avoid apprehension (18 Pa.C.S. § 5126) and reckless endangerment (18 Pa.C.S. § 2705).[1] He was sentenced to an aggregate prison term of 53 to 106 months. As we find that the evidence was legally sufficient,[2] the judgments of sentence are affirmed.

I.

This case stems from a fatal drug overdose by George Duke, Jr. (Duke) in 2015. Shortly after his death, the Commonwealth linked the substances found in Duke's system to narcotics distributed by Shroyer.

Officer Christopher Lucco testified that he spoke with Shroyer on the day of Duke's death. According to the officer, Shroyer said that Duke was friends with his own son and that he had gone to check on Duke after hearing that police vehicles were parked at his home. Despite telling Officer Lucco that he was "trying to keep him clean," Shroyer had admitted to one of his associates, Kyle Dweyer, that he had sold drugs to Duke shortly before his death. See Trial Transcript, 10/31/2019, at p. 45; Trial Transcript,

_____

[1] Shroyer was also convicted of possession with intent to distribute heroin; possession with intent to distribute a designer drug; conspiracy to distribute a designer drug; and possession of a controlled substance. These convictions are not at issue here. The two related cases at the above-captioned docket numbers have been consolidated into this one appeal.

[2] The facts discussed in this memorandum are taken from the record and the trial court's 1925(a) opinion.

10/29/2019, at p. 160. Shroyer was also heard telling his family members around that time to keep those drug sales to Duke a secret.

Further, after Duke's overdose, Shroyer admitted to several individuals that he was aware that the narcotics he was selling were of a very high potency. In fact, he was selling high-grade heroin, mixed with the opioid hydrochloride. Shroyer and his associates kept an inventory of especially potent drugs to meet their clients' demand for it. See Trial Transcript, 10/29/2019, at p. 203. At trial, the jury heard Shroyer's former cellmate recount that Shroyer had bragged about selling the "good stuff" to Duke. Id. at p. 251.

Several witnesses confirmed at trial that at the time of Duke's death, the heroin/hydrochloride mixture could be highly potent and that its potency varied unpredictably. It was also clear from the evidence that Shroyer knew Duke had severe addiction problems, having been previously committed to rehabilitation facilities.

Officer Lucco contacted Shroyer on November 16, 2017, to notify him that there was a warrant out for his arrest in connection with Duke's death. Shroyer was asked to turn himself in and he indicated that he would do so. When Shroyer did not appear, Officer Lucco tried to contact Shroyer at his residence in Foster Township, but did not find him there; nor could Shroyer be reached by phone or through local family members.

Shroyer was not found until November 21, 2017, at a friend's home in McKean County. Once police arrived there, Shroyer initially did not cooperate, refusing to come out after police had requested his surrender. Moments later, however, once the police had surrounded the home, Shroyer came out with his hands above his head. Officer Lucco then arrested Shroyer, at which point he said, "Jeez, [Officer Lucco], couldn't you have given me a couple days?" Trial Transcript, 10/31/2019, at p. 77.

After Shroyer was tried and convicted, he filed post-sentence motions disputing the sufficiency of the evidence as to the counts of flight to avoid apprehension and reckless endangerment. The trial court denied all of Shroyer's post-sentence claims.

In its 1925(a) opinion, the trial court summarized the evidence of flight to avoid apprehension as follows:

> This evidence, taken together, was sufficient to demonstrate that: 1) the Defendant was aware that the police were investigating the death of George Duke, Jr.; 2) he knew was the subject of that investigation; 3) he knew charges had been filed against him and the police were looking for him; [4] he had been asked to go to the police station and indicated that he would do so in a few hours; [5] he never went to the police station and took efforts to conceal his whereabouts. Specifically, he avoided his residence, shut down his phone and went to a different location; 6) he refused to leave the home where he was apprehended and, at one point, attempted to run. He avoided being apprehended for 5 days. His intent to avoid apprehension was made clear when he told Chief Lucco when he was apprehended: "Jeez, Christ, couldn't you have given me a couple days?" Therefore, there is sufficient evidence to demonstrate that he had the intent to avoid being apprehended; and the Defendant is not entitled to relief on appeal.

Trial Court Opinion, 2/10/2020, at 2-6.

The trial court did not address Shroyer's post-trial motion challenging the sufficiency of the evidence as to the reckless endangerment count. However, Shroyer had raised this issue in a 1925(b) statement, preserving it for appeal.[3]

Shroyer now presents the following two issues in his appellate brief:

> I. Whether the evidence sufficiently sustains the jury's conviction for the offense of Flight to Avoid Apprehension where the only evidence presented was that Defendant was asked to come to the Bradford City Police Department over the phone, that Defendant did not go to the Bradford City Police Department, and that Defendant was arrested on November 21, 2017 in McKean County?
>
> II. Whether the evidence sufficiently sustains the jury's conviction for the offense of Recklessly Endangering Another Person where there was no evidence presented that Defendant was aware that the substance he was found to have given to the Decedent contained Butyryl Fentanyl or that Defendant was otherwise aware of the "potency" of the substance he gave to the victim?

Appellant's Brief, at 9 (suggested answers omitted).

_____

[3] This Court may consider this issue on appeal even though the trial judge did not discuss it in its Rule 1925(a) opinion. See Commonwealth v. Hood, 872 A.2d 175, 178 (Pa. Super. 2005) (noting that while the purpose of a Rule 1925(a) opinion is "to provide the appellate court with a statement of reasons for the order . . . to permit effective and meaningful review," failure to file a Rule 1925(a) opinion does not necessarily preclude our consideration of an appellate issue's merits). Because the sufficiency of the evidence supporting the reckless endangerment conviction may be determined from review of the record, it is unnecessary to remand the case to the trial court for further elaboration. See id.

II.

A.

Shroyer argues that the evidence was insufficient to sustain his convictions for flight to avoid apprehension and reckless endangerment.

Our inquiry for such claims is limited to assessing whether the fact-finder heard evidence sufficient to satisfy each element of the subject offenses beyond a reasonable doubt.  See Commonwealth v. Sunealitis, 153 A.3d 414, 419 (Pa. Super. 2016).  In that review, the evidence must be construed in a light most favorable to the prevailing party, and any doubts regarding guilt are to be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law, the verdict cannot stand.  Id.

A conviction may be sustained where the elements are proven circumstantially, and credibility is an issue resolved by the fact-finder, who may believe all, part or none of a witness's testimony.  See Commonwealth v. Strafford, 194 A.3d 168, 174 (Pa. Super. 2018).  "Because evidentiary sufficiency is a matter of law, our standard of review is de novo and our scope of review is plenary."  Commonwealth v. Brooker, 103 A.3d 325, 330 (Pa. Super. 2014).

B.

First, we consider whether the Commonwealth presented evidence satisfying each element of the offense of flight to avoid apprehension.  A person commits this crime if he has been charged with a crime and "willfully

conceals himself or moves or travels within or outside this Commonwealth with the intent to avoid apprehension, trial or punishment." 18 Pa.C.S. § 5126(a).

Shroyer argues that the evidence was lacking because nothing in the record shows that he attempted to conceal himself or avoid detection after police informed him of new criminal charges. However, based on our review of the record, the Commonwealth produced sufficient evidence to sustain Shroyer's conviction as to each element of this offense, including the intent to elude.

The testimony of numerous witnesses established that Shroyer knew he was charged with crimes related to Duke's fatal overdose the day it occurred. Shroyer advised his friends and family to keep his drug sales to Duke a secret. Five days after learning that the police had put out a warrant for his arrest and agreeing to turn himself in, Shroyer was located at a friend's home, appearing to be hiding or at least reluctant to be taken into custody. His comments to police suggested that Shroyer had no intention of turning himself in as he had agreed to do days earlier.

On these facts, the jury could infer that Shroyer intended to elude the police. See Commonwealth v. Steffy, 36 A.3d 1109, 1112 (Pa. Super. 2012) (sustaining conviction where defendant fled from police after becoming aware of outstanding arrest warrant). Accordingly, the trial court did not err in denying Shroyer's sufficiency claim on that count.

C.

We now consider the sufficiency of the evidence to support Shroyer's reckless endangerment conviction.

A person commits this offense if he "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. When committing this offense, the perpetrator must have a "conscious disregard of a known risk of death or great bodily injury[.]" Commonwealth v. Klein, 795 A.2d 424, 428 (Pa Super. 2002) (citation omitted). "Reckless" conduct is defined in the Crimes Code as a disregard for a risk "of such nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." 18 Pa.C.S. § 302(b)(3).

We have held that the sale and use of heroin is so inherently dangerous that it may constitute "reckless" conduct. See Commonwealth v. Kakhankham, 132 A.3d 986, 995-96 (Pa. Super. 2015) (holding that drug seller could be liable for customer's fatal overdose on count of reckless endangerment); see also Minn. Fire and Cas. Co. v. Greenfield, 805 A.2d 622, 629 (Pa. Super. 2002) (describing heroin's potential for abuse and the fact that using it is "inherently dangerous" and akin to a game of "Russian

roulette."); Commonwealth v. Carr, 227 A.3d 11, 15-17 (Pa. Super. 2020) (same).

Here, there was ample evidence that Shroyer knew he was selling opioids to Duke which were potentially of very high potency, exposing Duke to severe physical harm. He knew that Duke suffered from addiction and that he was entered into rehabilitation facilities on multiple occasions. Duke died soon after ingesting the drugs Shroyer had sold to him. All of this was evidence from which the jury could conclude that Shroyer knew of but disregarded the risks that the drugs posed to Duke. Thus, the evidence was sufficient and the trial court did not err in denying Shroyer's post-sentence motion as to this count.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/2020