J-S24035-20 & J-S24036-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID R. PRATT, | : | |
| | : | |
| Appellant | : | No. 2599 EDA 2019 |

Appeal from the Judgment of Sentence Entered August 20, 2019
in the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0003704-2018

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID R. PRATT, | : | |
| | : | |
| Appellant | : | No. 2603 EDA 2019 |

Appeal from the Judgment of Sentence Entered August 20, 2019
in the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0008146-2017

BEFORE:    BENDER, P.J.E., STABILE, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:    **FILED SEPTEMBER 11, 2020**

David R. Pratt (Appellant) appeals from his judgments of sentence imposed following his convictions for burglary, home improvement fraud, deceptive business practices, and theft by deception at docket number CP-09-CR-0008146-2017 (8146), and for home improvement fraud, two counts of theft by deception, two counts of receiving stolen property, bad checks,

---

*Retired Senior Judge assigned to the Superior Court.

and theft of services at docket number CP-09-CR-0003704-2018 (3704).

We affirm his judgment of sentence at each docket.[1]

All of the charges relate to Appellant's business dealings. The burglary, deceptive or fraudulent business practices, and theft by deception charges at docket number 8146 stemmed from

> a large-scale renovation project Appellant agreed to undertake for Julie and Wayne Dovan. The Dovans [live in New York City, but spend weekends at a home they] own []in … Bucks County. In the summer of 2015, the Dovans contacted Appellant to renovate a barn located on their property. The renovations were to include re-siding the existing structure and remodeling the interior to include an art studio, an entertainment area, and a storage space. On September 12, 2015, Appellant provided the Dovans with an estimate of $95,900 [for the renovations]. Between September 21, 2015, and March 6, 2016, the Dovans issued checks, payable to Appellant, totaling $42,000. …
>
> Although the work appeared to proceed quickly in the fall of 2015,[3] no significant work had been [completed] on the project as of the [s]pring of 2017, 20 months after the project began.
>
> _____
>
> [3] A trench for water and electric lines was dug, some framing was placed at the back of the barn, and pointing of the existing stonework was done.
>
> As early as December 2015, work stoppages began. Simultaneously, the Dovans started to have difficulty contacting Appellant. When they were able to communicate with him, he gave excuses for his failure to respond to them and for his failure to work on the property. As the project continued to stall, the Dovans began to inquire about the materials they had paid for, specifically the cedar siding [for which they had given Appellant a $15,000 check on September 21, 2015]. Appellant

_____

[1] The charges at the two dockets were tried together. We dispose of both appeals in one memorandum.

advised the Dovans that the siding had been purchased and was in storage. Appellant promised the Dovans he would give them a receipt for the siding. Appellant did not produce a receipt. He did not deliver or install any wood siding and did not return the $15,000 the Dovans paid him to purchase the siding.

On May 17, 2017, after an extended absence from the property and sporadic contact with the Dovans, Appellant made an unannounced appearance at the Dovan residence, [which was located next to the barn]. The Dovans' surveillance camera captured images of Appellant entering and leaving the Dovans' home. Appellant entered the home at 12:55 p.m. He left the residence two minutes later, at 12:57 p.m., carrying two bottles of beer. Appellant did not have permission to enter the residence and did not have permission to take the beer. … Upon being questioned by the Dovans, Appellant stated he entered their residence to retrieve screws and nails. Shortly thereafter, the Dovans terminated the contract.

A review of Appellant's finances revealed that Appellant began the project with a negative bank balance. On September 21, 2015, Appellant deposited the $15,000.00 check issued to him by the Dovans into his account. On that same date, Appellant cashed a check, payable to himself, for $5,000.00 from that same account. Two days later, Appellant cashed another check, also payable to himself, for $5,000.00 from the account. Appellant also made numerous ATM cash withdrawals from the account that resulted in another check he issued being rejected for insufficient funds. The only transactions that appeared to have any connection to the construction w[ere] to a lumber company for $349.48 and to a hardware store for $6.66.

On October 26, 2015, Appellant deposited [a] $10,000.00 check issued to him by the Dovans into his account. On that same date, Appellant cashed two checks made payable to himself – one for $3,000 and one for $2,550 from the account. He also made ATM cash withdrawals from the account that resulted in another check he issued being rejected for insufficient funds. Nothing in Appellant's bank records indicates any of the funds were used for construction purposes.

On February 7, 2016, Appellant deposited [a] $7,000 check issued to him by the Dovans into his account. Over the following week, Appellant made teller cash withdrawals from that

- 3 -

account for the amounts of $3,000 and $1,100 and ATM card cash withdrawals for the amounts of $500, $500, $202.25, and $202.25. Only two withdrawals appeared to be related to construction – one for $8.55 to a contractor supply company and one for $62.02 to Ace Hardware.

On March 6, 2016, Appellant deposited another check for $10,000 issued to Appellant by the Dovans into his account. Again, Appellant made a series of teller and ATM withdrawals. The only withdrawals that appeared to be connected to construction were for hardware store purchases for $287.82.

At the same time the contract was terminated in the spring of 2017, the barn was a shell with little more than the frame standing. In November of 2017, the structure collapsed. Appellant did not return any of the $42,000 he was paid for the project.

Trial Court Opinion, 12/20/2019, at 4-7 (some numbering format, comma use, capitalization, and party designations altered; titles and record citations omitted).

The second set of charges for theft by deception and receiving stolen property at docket number 3704

involved a written contract Appellant entered into with homeowner Nancy Minich in December of 2017 for work to be performed on her property located … in Bucks County…. Under the terms of the agreement, Appellant was to build and install a lattice fence, build and install a gate around an existing chicken coop, and repair, paint, and re-install an existing gate for $3,000. Minich gave Appellant a deposit of $1,303 before work began.

At the time the agreement was entered into, Appellant told Minich that the project would be complete in a couple of days. Eight days later, very little work had been done. In order to assure Minich that the work was, in fact, progressing, Appellant told her that the gate he agreed to repair was "ready to go" and he was about to install it. Contrary to Appellant's

- 4 -

representations, only minor repairs had been completed on the gate.

As the work stoppage continued, Appellant began to ignore Minich's email and telephone inquiries regarding his failure to complete the project and her demands for the return of her down payment. On February 8, 2018, Minich emailed Appellant advising him that, if she did not hear from him in the next week and if he did not complete the work as agreed, she would contact the police. When Appellant did not respond, she emailed him again on February 14, 2018, and advised him that he "must either do the work or return the full amount of the check." She further advised him that she had contacted the police and planned to "press charges."

Appellant did not complete any of the work he agreed to perform and did not deliver any of the materials he was obligated to supply. Despite these facts, Appellant did not return any of Minich's deposit.

*Id.* at 7-9 (some numbering format, comma use, capitalization, and party designations altered; titles and record citations omitted).[2]

---

[2] During the same trial, Appellant was convicted of several other charges at docket number 8146 that were also related to his business dealings. He does not challenge the sufficiency of the evidence for those convictions on appeal. One set of charges - bad checks, theft by deception, and receiving stolen property – stemmed from Appellant's purchase of lumber and other materials from Tinsman Brothers Lumber, Inc. (Tinsman). On August 23, 2014, Appellant presented a check in the amount of $1,510.57 for these materials, which subsequently was returned due to insufficient funds in his account. Tinsman notified Appellant several times of the money due and owing, but Appellant never paid for the materials.

Appellant's conviction for theft of services occurred in connection with a dumpster container from Tinari Container Services (Tinari). Appellant contracted with Tinari for delivery of a dumpster container to the Dovans' property in exchange for $405 that Appellant paid for with his credit card. After delivery, Tinari was only able to charge $17.88 to the card. Tinari attempted to charge the card 16 times in 2017 without success, Appellant

*(Footnote Continued Next Page)*

Following a non-jury trial, the trial court found Appellant guilty of one count each of burglary, deceptive business practices, bad checks, theft of services; three counts of theft by deception; and two counts of receiving stolen property.[3] Appellant initially was sentenced on November 16, 2018, but following timely-filed post-sentence motions, his sentences were vacated. Re-sentencing was deferred pending Appellant's evaluation for the State Intermediate Punishment (SIP) program. On August 20, 2019, Appellant was re-sentenced. At docket number 8146, the trial court sentenced Appellant to SIP, a consecutive term of probation of ten years, and ordered him to pay $42,000 in restitution to the Dovans. At docket number 3704, the trial court sentenced Appellant to an aggregate term of probation of seven years, consecutive to his SIP participation and concurrent to his probation at docket number 8146, and ordered him to pay $4,151.51 in restitution to Minich, Tinari, and Tinsman.

These timely-filed appeals followed. Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant raises four issues in appeal number

_(Footnote Continued)_ ───────────────

did not respond to Tinari's seven attempts to contact him, and the balance was still outstanding at trial.

[3] The trial court found Appellant not guilty of two counts of home improvement fraud because neither his agreement with the Dovans nor his agreement with Minich specified a date by which the services and materials were to be provided.

2603 EDA 2019, which relates to the crimes against the Dovans at docket

number 8146.

1. Whether there was insufficient evidence to find Appellant guilty of burglary because the Commonwealth failed to prove beyond a reasonable doubt that Appellant entered the home with the intent to commit a crime therein.

2. Whether there was insufficient evidence to find Appellant guilty of burglary because the Commonwealth failed to prove beyond a reasonable doubt that Appellant was not licensed and/or privileged to enter the home.

3. Whether there was insufficient evidence to find Appellant guilty of deceptive business practices because the Commonwealth failed to prove beyond a reasonable doubt that Appellant had the intent to deceive.

4. Whether there was insufficient evidence to find Appellant guilty of theft by deception because the Commonwealth failed to prove beyond a reasonable doubt that Appellant had the intent to permanently deprive.

Appellant's Brief (Dovan Appeal) at 4-5 (trial court answers and unnecessary

capitalization omitted).

Appellant raises one issue at appeal number 2599 EDA 2019, which

relates to his theft by deception crime against Minich at docket number

3704.

1. Was there insufficient evidence to find Appellant guilty of theft by deception because the Commonwealth failed to prove beyond a reasonable doubt that Appellant had the intent to permanently deprive.

Appellant's Brief (Minich Appeal) at 4 (trial court answers and unnecessary

capitalization omitted).

All of Appellant's issues challenge the sufficiency of the evidence supporting his convictions. "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Giron***, 155 A.3d 635, 638 (Pa. Super. 2017). Further, to address a challenge to the sufficiency of the evidence, we must determine

> whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

***Commonwealth v. Carr***, 227 A.3d 11, 19 (Pa. Super. 2020). Additionally, the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. ***Commonwealth v. Gonzalez***, 109 A.3d 711, 716 (Pa. Super. 2015).

**Issues 1 and 2 in Dovan Appeal: Burglary**

In order to prove Appellant committed burglary under subsection 3502(a)(2) of the Crimes Code, the Commonwealth had to prove that "with

the intent to commit a crime therein," Appellant "enter[ed] a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present[.]" 18 Pa.C.S. § 3502(a)(2). "It is a defense to prosecution for burglary if … [t]he actor is licensed or privileged to enter." *Id.* at § 3502(b).

Appellant does not dispute that he entered the home of the Dovans, but argues that the Commonwealth failed to prove that he entered with the intent to commit a crime therein. Appellant's Brief (Dovan Appeal) at 11. According to Appellant, he entered the home to retrieve two beers that belonged to one of his workers, which meant he did not enter with intent to commit a crime. *Id.* (citing *Commonwealth v. Cavanaugh*, 133 A.2d 288 (Pa. Super. 1957)). Wayne Dovan did not testify; only Julie Dovan did, and Appellant contends that Julie's testimony did not establish that the beer belonged to her and her husband, since Julie only stated that they kept beer in the basement, and did not affirmatively state that the beer belonged to the Dovans. *Id.*

Appellant further argues that the Commonwealth failed to prove that he did not have license or privilege to enter the home, *i.e.*, that he was someone who naturally was expected to be inside the home in the natural course of his duties. *Id.* at 14 (citing *Commonwealth v. Corbin*, 446 A.2d 308 (Pa. Super. 1982) (concluding janitor exceeded scope of his privilege

when janitor used his work keys to enter outside his working hours to steal items from the building)).  Appellant emphasizes that he entered the home during the workday, and the Dovans gave him a key and provided him with the security code so that he could enter the home while he was working on site to use the bathroom, check for notes from the Dovans, or perform odd jobs requested by the Dovans.  *Id.* at 15-16.

The trial court found that Appellant entered the home at 12:55 p.m., took two beers from the basement belonging to the Dovans, and left two minutes later carrying the beers.  Trial Court Opinion, 12/20/2019, at 10.  It credited Julie's testimony that Appellant was not permitted in the home except for certain circumstances and was not permitted to take their alcoholic beverages.  *Id.*  On the other hand, it rejected as not credible Appellant's testimony that the beers belonged to his worker, particularly because when confronted by the Dovans subsequent to the incident, Appellant lied, claiming he entered their home to retrieve screws and nails. *Id.* at 10-11.  Accordingly, the trial court determined that Appellant entered the home with the intent to commit theft.  *Id.* at 10.

The trial court also rejected the notion that Appellant was privileged to enter the home based on Julie's testimony that he did not have general access to the home, and was only permitted to enter when she requested in advance for him to perform specific work in the home, which was not the case that day.  *Id.* at 11.  The trial court emphasized that it had been two

- 10 -

months since the last time Appellant performed work on the property, and he had been ignoring the Dovans' attempts to reach him. *Id.* at 12. That and Appellant's attempts to mislead the Dovans when they confronted him evidenced he was not there to perform work and instead intended to commit theft of the beer.

Upon review of the record, we find that it supports the trial court's findings and analysis. When viewing the evidence in the light most favorable to the Commonwealth, it is clear that the Commonwealth proved the elements of burglary beyond a reasonable doubt. The footage from the security camera shows that Appellant only spent two minutes inside and left carrying the beer bottles, suggesting that he entered with the specific purpose of taking the beer. Appellant's story changed between his initial explanation to the Dovans that he was getting screws and his claim at trial that the beer belonged to his worker, and they had entered the home earlier in the day to put the beer in the refrigerator to chill it for an after-work drink. He claims that they entered and exited several times throughout the day, yet the Dovans' security camera only alerted them that someone entered the house once. Accordingly, there was sufficient evidence to establish Appellant's intent to enter the home to commit the crime of theft of the beer.

Regarding the defense of privilege, this Court has explained that a "person is privileged, within the meaning of [the] burglary statute, if he may

naturally be expected to be on the premises often and in the natural course of his duties or habits." **Corbin**, 446 A.2d at 311. A person with privilege "may still commit burglary" if he enters a building when "he would not reasonably be expected to be present." **Id.** It is the Commonwealth's burden to prove beyond a reasonable doubt that the person was not licensed or privileged to enter the building. **Id.** at 309. Privilege can be extinguished by a deterioration in relations and a period of separation. **See Commonwealth v. Woods**, 638 A.2d 1013, 1015-16 (Pa. Super. 1994).

We agree with the trial court that the Commonwealth established sufficient evidence to demonstrate that Appellant did not have a privilege to enter the residence at the time of the incident, notwithstanding his possession of a key and the security code. Julie's testimony established that Appellant was not granted access to the house *carte blanche*. Furthermore, contrary to Appellant's attempt to paint his entry as part of his normal work day, prior to the incident he had not shown up to the work site in two months and was dodging the Dovans' attempts to reach him. Thus, the Commonwealth sufficiently established that he did not possess a general privilege to enter and he was not reasonably expected to be present at the time of the incident. **See Corbin**, 446 A.2d at 311; **see also Woods**, 638 A.2d at 1015-16. Accordingly, we affirm his judgment of sentence as to his burglary conviction.

**Issue 3 in Dovan Appeal: Deceptive or Fraudulent Business Practices**

Appellant next challenges the sufficiency of the evidence supporting his deceptive or fraudulent business practices conviction. Appellant's Brief (Dovan Appeal) at 17-19. "Proof of deceptive or fraudulent business practices requires that a defendant (1) with a wrongful intent to deceive; (2) 'in the course of business;' (3) 'sells, offers or exposes for sale, or delivers less than the represented quantity of any commodity or service.'" *Commonwealth v. Hill*, 140 A.3d 713, 718 (Pa. Super. 2016) (citing 18 Pa.C.S. § 4107(a)(2)); *see also Commonwealth v. Eline*, 940 A.2d 421, 433 (Pa. Super. 2007) (holding that "fraud, which includes a wrongful intent to deceive, is an element of [deceptive or fraudulent business practices]"). A defendant may defend against such a charge by proving by a preponderance of the evidence "that his conduct was not knowingly or recklessly deceptive." 18 Pa.C.S. § 4107(b).

Appellant contends that in order to be guilty of this crime, a "defendant must accept the payment with the intent of not completing the agreed[-]upon work." Appellant's Brief (Dovan Appeal) at 17. He argues that the Commonwealth's evidence was insufficient to establish his intent; according to Appellant, "there was overwhelming evidence presented that Appellant had a genuine belief from the time the contract was entered into up until the day he was fired that he would comply with the contract[.]" *Id.* Appellant claims the project was complex and became overwhelming, but he

always intended to finish. *Id.* at 18. He points to his completion of what he classifies as "substantial" work on the project as evidence that he never intended to defraud the Dovans when he accepted partial payment on the project. *Id.* at 18-19.

The trial court offered the following analysis of Appellant's contentions. The trial court found that Appellant had a negative balance in his bank account when he accepted the Dovans' very large project, which then prompted him to accept large sums of money from the Dovans, which he "immediately diverted to his personal use." Trial Court Opinion, 12/20/2109, at 13. A review of his bank account shows that he used very little of the money "to pay for items that could potentially be construction-related expenses." *Id.* Despite accepting $15,000 from the Dovans to purchase cedar siding, his bank account does not reflect a purchase for the siding, and he neither delivered the siding nor refunded the money. *Id.* at 13-14. Appellant initially did some work in the fall of 2015, but "no significant work" had been performed on the project 20 months later in the spring of 2017. *Id.* at 14. He was "absent from the property for extended periods of time and maintained only sporadic contact with the Dovans." *Id.* Appellant never returned any of the $42,000 to the Dovans, made "spurious excuses" for delays, and over a year and half later, not only had the barn not been renovated, but it was "reduced to such poor condition that it collapsed." *Id.* Based on these facts, the trial court concluded that the

Commonwealth set forth sufficient evidence to establish that Appellant intended to deceive the Dovans when he took multiple large payments from them with the intent of not purchasing or delivering the materials promised or completing the work agreed upon. *Id.* at 13.

In *Eline*, the defendant accepted money to install swimming pools for a large number of customers and never delivered the pools. Eline had argued that given more time, he would have completed the swimming pools he was contracted to install; in other words, he was slow, but not fraudulent. *Eline*, 940 A.2d at 431.

Eline was convicted of deceptive or fraudulent business practices. We affirmed Eline's conviction, concluding that the Commonwealth proved that Eline did not intend to complete the agreed-upon work when he accepted deposits and sometimes second payments. We found it persuasive that Eline did not begin or complete the installation of pools with a number of customers within the agreed-upon timeframe, became non-responsive to inquiries by the customers after acceptance of their money, and did not refund any portion of monies paid after customers complained. *Id.* at 433. We also noted that while Eline completed one swimming pool for one customer, this partial work did not exonerate him considering he did not deliver a deck that was part of the contract, did not refund her money, and did not respond to her inquiries. *Id.*

Similarly, when viewing the evidence in the instant case in the light most favorable to the Commonwealth, we conclude the same result is warranted here. The Commonwealth introduced sufficient evidence demonstrating that, based on the totality of the circumstances, one could infer that, notwithstanding some initial work on the project, Appellant accepted money for services he did not intend to complete and materials he did not intend to deliver. We agree with the trial court that the combination of Appellant's negative cash flow, immediate transfers to his personal account following large sums paid by the Dovans, failure to purchase the cedar siding despite being provided specific sums to do so, lack of construction purchases, long absences from the project, failure to remain in consistent contact and to respond to the Dovans' inquiries, sporadic approach to the work, constant excuses, and failure to make substantial progress on the project after 20 months, all demonstrate his wrongful intent to deceive the Dovans. Accordingly, we affirm his conviction for deceptive and fraudulent business practices.

**Issue 4 in Dovan Appeal: Theft by Deception**

Appellant challenges the sufficiency of the evidence for his conviction of theft by deception relating to his contract to restore the Dovans' barn. Appellant's Brief (Dovan Appeal) at 20-21. "A person is guilty of theft if he intentionally obtains or withholds property of another by deception." 18 Pa.C.S. § 3922(a). To deceive within the meaning of the statute, the person

must intentionally "create[] or reinforce[] a false impression, including false impressions as to law, value, intention or other state of mind." *Id.* at § 3922(a)(1). "[D]eception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise[.]" *Id.* To render a failure to perform under a contract a crime, the factfinder must infer from facts other than the non-completion that the defendant "never intended to perform his part of the contract." *Commonwealth v. Gallo*, 373 A.2d 1109, 1111 (Pa. 1977); *see also Commonwealth v. Layaou*, 405 A.2d 500 (Pa. Super. 1979) (holding that the Commonwealth must prove that the defendant did not intend to perform at the time he accepted payment under a contract; because Layaou began the project, the evidence showed Layaou originally intended to perform the work and simply later abandoned it).

Appellant argues that because he began work on the home, the Commonwealth did not prove that he deceived the Dovans by creating or reinforcing a false impression that he would perform the work when he did not intend to do so. Appellant's Brief (Dovan Appeal) at 20-21 (citing *Layaou*, *supra*). He emphasizes the lack of end date in the contract and points to alleged delays in obtaining a permit and his personal family problems, and claims he always intended to perform the work up until the day he was fired. *Id.* at 21.

We are not persuaded by Appellant's argument. Unlike **Layaou**, where the Commonwealth simply relied upon Layaou's non-completion of the project, the Commonwealth here introduced a variety of evidence indicating that Appellant created a false impression that he would completely restore the barn and purchase certain supplies, such as the cedar siding, but in actuality he did not intend to complete the project or purchase the supplies when he accepted the various deposits from the Dovans. As explained in more detail *supra*, while Appellant may have performed some work for the Dovans, the haphazard work he completed over the course of 20 months paled in comparison to the work he promised the Dovans he would complete at the outset. Moreover, the disparity between promises and his performance was occurring alongside the backdrop of his negative cash flow, immediate transfers to his personal account following deposits, failure to purchase large-scale supplies and other construction purchases, lengthy absences, and dodging of the Dovans' inquiries. Accordingly, we conclude the Commonwealth introduced sufficient evidence of his deception, and affirm his conviction for theft by deception at appeal number 2603 EDA 2019.

**Issue 1 in Minich Appeal: Theft by Deception**

As with his theft by deception conviction regarding the Dovans' barn, Appellant challenges the sufficiency of the evidence proving that he deceived Minich as to the building of her chicken coop. Once again, Appellant argues

he always intended to finish the project, and points to the lack of end date in the contract, obstacles such as inclement weather interfering with outdoor work, and the completion of some of the contractually-obligated work. Appellant's Brief (2599 EDA 2019) at 10-12.

The trial court offered the following analysis of Appellant's sufficiency claim.

> As was the case with the Dovans, [Appellant] accepted the [$1303.00] down payment followed by an immediate work stoppage and, thereafter, maintained only sporadic contact with [Minich]. Although the project was a simple one [Appellant] had promised he would complete in a few days, he performed only a minimal amount of work, never delivered the promised materials, never completed any aspect of the project[,] and never refunded any of the down payment money. Based on the totality of the circumstances, [the trial court] finds that the evidence was sufficient to establish intent.

Trial Court Opinion, 12/20/2019, at 15.

Upon review, we determine that the trial court's findings are supported by the record. Although there was no end date to the project, Appellant represented that the project was a simple one with a short turn-around time, yet only completed a sliver of the promised work before dodging Minich's inquiries. He did not return Minich's money upon demand or complete the project, misled Minich about the status of repairs to the gate, and did not return Minich's gate upon demand. Accordingly, we conclude the Commonwealth introduced sufficient evidence of his deception, and affirm his conviction for theft by deception at appeal number 2599 EDA 2019.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 9/11/20