J-S36036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOSE MALDONADO | : | |
| | : | |
| Appellant | : | No. 405 EDA 2023 |

Appeal from the Judgment of Sentence Entered June 27, 2022
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0001856-2021

BEFORE:  BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED MARCH 25, 2024**

Appellant, Jose Maldonado, appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas, following his jury trial conviction for drug delivery resulting in death ("DDRD"), possession with intent to deliver a controlled substance ("PWID"), involuntary manslaughter, criminal use of a communication facility, and recklessly endangering another person ("REAP").[1]  We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> These charges stemmed from an incident that began on November 12, 2019.  That day, Jerry Carpenter ("Victim") made plans with a friend, Luke Jasinski ("Luke"), to purchase and use heroin.  (N.T. Trial, 3/2/22, at 27).  The

---

[1] **See** 18 Pa.C.S.A. § 2506(a), 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. §§ 2504(a), 7512(a), and 2705 respectively.

two communicated on Facebook Messenger, and Luke agreed to pick Victim up from his home, drive Victim to the bank to withdraw cash, and take Victim to meet his supplier, later determined to be Appellant. (*Id.* at 38). After Victim withdrew cash, he and Luke drove to Quakertown because Appellant asked Victim to meet him at Harbor Freight Tools, located at 246 N. West End Boulevard, Quakertown, Bucks County, Pennsylvania ("Harbor Freight"). (*Id.*) Law enforcement utilized cell phone records to discover text messages between Victim and Appellant, as well as location-based cell phone tracking, to confirm this transaction. Once they arrived, Victim exited the vehicle, walked toward Harbor Freight, which was out of Luke's sight, and then he returned with heroin. (*Id.* at 41-42). Victim and Luke then went to a park near St. John's Lutheran Church in Milford, Bucks County, Pennsylvania to use the heroin, after which Victim ultimately overdosed and died. A nearby resident found Victim, deceased, in the early morning of November 13, 2019. (N.T. Trial, 3/1/22, at 48-54). Dr. Ian Hood ("Pathologist") performed an autopsy and confirmed Victim's cause of death to be overdose of heroin/fentanyl.

On April 23, 2021, Pennsylvania State Police Trooper Jordan Rhodes charged Appellant with the aforementioned crimes. On April 19, 2021, all charges were held for court, following a preliminary hearing before the Honorable Magisterial District Judge Regina Armitage. On February 28, 2022, Appellant filed an omnibus pre-trial motion asking [the trial court] to suppress certain statements he made during an interview with law enforcement and to suppress evidence that was found that same day. After a hearing on that same day, February 28, 2022, [the trial court] denied the motion to suppress Appellant's statement and the evidence seized from his cellphones, as he had consented to have the phones searched. [The trial court] also denied Appellant's motion to suppress evidence of a controlled buy that took place the day of his arrest, and the active warrant that led law enforcement to Appellant's location on that day. However, [the trial court] granted Appellant[']s motion to preclude the Commonwealth from introducing evidence of other controlled methamphetamine buys, as they were not relevant and unduly prejudicial.

Appellant's jury trial began the following day on March 1,

- 2 -

2022. At its conclusion on March 3, 2022, Appellant was found guilty on all counts and sentencing was deferred until June 27, 2022. That day, [the trial court] sentenced Appellant to a term of not less than ten (10) nor more than twenty (20) years' incarceration on DDRD, with no further penalty on the remaining counts. Appellant was given credit for time served beginning on January 7, 2021. On August 16, 2022, Appellant filed a Post-Conviction Relief Act ("PCRA") petition wherein he asked his appeal rights be reinstated. On November 1, 2022, in accordance with an agreement between Appellant and the Commonwealth, [the court] granted Appellant's petition and gave him leave to file a post-sentence motion *nunc pro tunc*. On December 19, 2022, Appellant filed his motion for reconsideration of sentence and post-sentence motion for verdict against the weight of the evidence. On January 17, 2023 [the trial court] heard Appellant's motion and subsequently denied it. On February 16, 2023, [the trial court] received Appellant's Notice of Appeal to the Superior Court and on February 17, 2023, [the court] ordered Appellant to submit his concise statement of errors complained of on appeal. [Appellant filed a timely statement on March 9, 2023.]

(Trial Court Opinion, 4/14/23, at 1-3) (citation formatting provided; unnecessary capitalization omitted).[2]

---

[2] We observe that the trial court erroneously advised Appellant to file a post-sentence motion within 10 days from the receipt of the transcripts. However, Rule of Criminal Procedure 720 provides that "[i]n those cases in which a petitioner under the Post Conviction Relief Act has been granted leave to file a post-sentence motion or to appeal *nunc pro tunc*, the filing of the post-sentence motion or the notice of appeal must comply with the timing requirements contained in paragraph (A) of this rule." Pa.R.A.P. 720, Cmt. Paragraph A of Rule 720 provides that "a written post-sentence motion shall be filed no later than 10 days after imposition of sentence." Pa.R.A.P. 720(A).

This Court has held that the trial court's failure to comply with Rule 720 constitutes a breakdown in the operation of the court that excuses the untimely filing of an appellant's notice of appeal. *See Commonwealth v. Patterson*, 940 A.2d 493, 500 (Pa.Super. 2007). Under these circumstances,

*(Footnote Continued Next Page)*

Appellant raises the following eight issues on appeal.

A. Did the trial court err in failing to suppress the evidence obtained from the warrantless search and seizures of 51 East Garrison Street?

B. Did the trial court err in failing to suppress testimony by Trooper DeAngles regarding controlled buys for methamphetamine?

C. Did the trial court err in precluding Appellant from questioning Terri-Lynn Jasinski about other drug dealers known to Luke Jasinski?

D. Did the trial court err in admitting and permitting the publication of exhibit C-64 to the jury?

E. Did the trial court err in failing to suppress the contents of Appellant's cell phones and Appellant's statements to police?

F. Did the trial court err in admitting phone records authenticated by an electronic signature?

G. Did the trial court abuse its discretion in sentencing Appellant by imposing manifestly excessive sentence, failing to consider all relevant factors, and relying on improper factors in imposing said sentence?

H. Were the verdicts of guilty supported by sufficient evidence?

(Appellant's Brief at 5-6) (unnecessary capitalization omitted).

In his first issue, Appellant claims that the trial court erred when it denied his motion to suppress the evidence seized during a warrantless search

---

we consider Appellant's post-sentence motion *nunc pro tunc* and subsequent notice of appeal as timely.

- 4 -

of the residence at 51 East Garrison Street, Bethlehem, Pennsylvania.[3]

Appellant argues that at the time of the search, he was in police custody handcuffed inside a police vehicle when police entered the home, without a warrant, and seized a bag and pelican box containing drugs. Appellant maintains that the police's reliance on the consent to search, given by Ms. Wendy Cicon-Flandorfer,[4] was unreasonable. Appellant insists that police conducted no inquiries and took Ms. Cicon-Flandorfer's word that she lived at the address simply to justify their warrantless entry. Appellant avers that at

_____

[3] Appellant's possession of the narcotics found at this residence is the subject of a separate case in Northampton County, Pennsylvania. Appellant filed a motion to suppress the evidence in that case. The suppression motion was still pending in the Northampton County case when he moved to suppress the same evidence in the instant case because the Commonwealth sought to use this evidence as "other bad acts" evidence in this case. As our Supreme Court has explained, "where two prosecutions arise out of a single search and/or seizure, a decision by a suppression judge during the first prosecution can, upon the motion of the previous prevailing party, become part of the second prosecution." **Commonwealth v. Lagana**, 510 Pa. 477, 483, 509 A.2d 863, 866 (1986). "The party against whom this decision is being offered may offer any new evidence which was previously unavailable." **Id.** This Court has applied the **Lagana** Court's holding to separate cases pending before courts of equal jurisdiction in different counties of this Commonwealth. **See Commonwealth v. Camperson**, 650 A.2d 65, 69 (Pa.Super. 1994). Under these circumstances, Appellant was not precluded from raising the motion to suppress in the instant case simply because he had already argued for suppression of the evidence in the Northampton County case. Further, because there was no ruling on the suppression motion in the Northampton County case at the time he moved for suppression of the evidence in this case, the trial court in this case was not required to adopt any findings or conclusions from the Northampton County case.

[4] Throughout the record Ms. Cicon-Flandorfer's name is alternatively written Ms. Flandorfer-Cicon. We have adopted the practice of the trial court and refer to the individual as Ms. Cicon-Flandorfer.

the time of the search, police were aware that Appellant was the only resident of the address. As such, Appellant suggests the officer's reliance on Ms. Cicon-Flandorfer's bald assertion that she was a resident, without making any attempt to verify the information, was an unreasonable mistake. Appellant concludes the search conducted pursuant to that mistaken consent was objectively unreasonable and the trial court should have granted his motion to suppress.[5] We disagree.

> "Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Williams**, 941 A.2d 14, 26 (Pa.Super. 2008) (*en banc*) (internal citations omitted).
>
> > [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.
>
> **Id.** at 27. The reviewing court's scope of review is limited to the evidentiary record of the pre-trial hearing on the suppression motion. **In re L.J.**, 622 Pa. 126, 79 A.3d 1073 (2013). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." **Commonwealth v.**

---

[5] At the suppression hearing, Appellant also argued that the consent given by Ms. Cicon-Flandorfer could not extend to search either his backpack or the pelican case. (N.T. Hearing, 2/28/22, at 99-102). However, Appellant abandoned this claim on appeal, and argued only that the consent to search the residence was not valid. (**See** Appellant's Brief at 18-22).

> *Luczki*, 212 A.3d 530, 542 (Pa.Super. 2019) (quoting *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa.Super. 2013)).  If appellate review of the suppression court's decision "turns on allegations of legal error," then the trial court's legal conclusions are nonbinding on appeal and subject to plenary review. *Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa.Super. 2017) (quoting *Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa.Super. 2015), *appeal denied*, 635 Pa. 750, 135 A.3d 584 (2016)).

*Commonwealth v. Mattis*, 252 A.3d 650, 653-54 (Pa.Super. 2021).

Under the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, a search conducted without a warrant is constitutionally impermissible unless an established exception applies.  *Commonwealth v. Kemp*, 961 A.2d 1247, 1260 (Pa.Super. 2008).  One such exception is voluntarily given consent.

This Court has explained that "[w]arrantless entry and search of a house is constitutionally permissible where an occupant with authority over the premises consents to the entry and search." *Commonwealth v. Lehnerd*, 273 A.3d 586, 590 (Pa.Super. 2022) (citations omitted).  Even if the individual consenting to the search lacks authority over the premises, "apparent authority exists and the warrantless entry and search are constitutionally permissible if the facts known to the law enforcement officers at the time would lead a reasonable person to believe that person who consented has authority to allow others to enter the premises." *Id.* (citations omitted).  "In order for the officer's belief to be reasonable, the officer will necessarily have to obtain enough information, through conversation and/or observation, to

- 7 -

make a sound judgment call as to whether the consenting party has common authority over the premises." ***Commonwealth v. Basking***, 970 A.2d 1181, 1200 (Pa.Super. 2009) (citations omitted). "If an officer encounters an ambiguous situation and has reason to doubt the consenting party's actual authority, or if the consenting party's assertions of authority appear unreasonable, the officer has an affirmative duty to inquire further into the matter." ***Id.*** (citation omitted). If the officers knew at the time facts that negate the individual's claim of authority over the premises, apparent authority does not exist. ***Id.***

This Court has held that the apparent authority to consent exception applied where police did not know the party's relationship with the dwelling, but the individual was inside the dwelling when police arrived, responded to the door, and invited police inside. ***See Lehnerd, supra*** at 591 (citing ***Commonwealth v. Quiles***, 619 A.2d 291, 293-97 (Pa.Super. 1993) (*en banc*)). Conversely, this Court has decided that apparent authority to consent to a search of a dwelling does not exist where the person giving consent is not inside the dwelling when the police arrive, and the police do not have reason to believe that she is at least temporarily living in the dwelling. ***Id.*** (citing ***Commonwealth v. Hughes***, 575 Pa. 447, 836 A.2d 893 (2003)).

Instantly, at the suppression hearing, Officer Stephen Deangeles testified that after completing a controlled narcotics buy involving Appellant, he approached the residence which Appellant had exited during the buy.

- 8 -

There, Ms. Cicon-Flandorfer was present in the doorway and identified herself as the individual renting the residence. (N.T. Hearing, 2/28/22, at 20). Officers presented her with the Pennsylvania State Police waiver of rights consent to search form, and Ms. Cicon-Flandorfer acknowledged verbally and written on the form that she consented to officers searching the residence. (*Id.*) Thereafter, Ms. Cicon-Flandorfer led police to the backpack and pelican box, which contained fentanyl, heroin, and related paraphernalia. (*Id.* at 133-34). Ultimately, the court found that the search "occurred as a result of the voluntary consent of the tenant who had the authority to control the premises." (*Id.* at 137). Therefore, the court denied Appellant's motion to suppress the evidence recovered from the backpack and pelican case, which was admitted as other bad acts evidence in the instant case.

The record supports the trial court's determination. As the court noted, Ms. Cicon-Flandorfer identified herself as the tenant of the residence and consented to law enforcement searching the residence. There was no evidence presented that Ms. Cicon-Flandorfer did not live at the residence, and officers had no reason to doubt her authority. *See Lehnerd, supra*. Thus, the warrantless search that police executed was permitted under the apparent authority consent doctrine, and the trial court did not err in denying the motion to suppress. *See Basking*, *supra*. Appellant's first issue is meritless.

In his second issue, Appellant argues that the trial court erred when it permitted the Commonwealth to introduce evidence from the January 13, 2020, drug sale which led to his arrest. Appellant claims that there was no probative connection between the controlled buy in which Appellant sold methamphetamine on January 13, 2020, and the instant offense of DDRD based on Appellant's delivery of fentanyl to Victim on November 12, 2019. Appellant posits that the Commonwealth did not establish that the crime for which Appellant was on trial grew out of or was caused by the later sale of methamphetamine.

In addition, Appellant maintains that the Commonwealth did not perform any comparative analysis between the heroin and fentanyl recovered from the residence at 51 East Garrison Street on January 13, 2020, and the heroin and fentanyl recovered from Victim. Appellant insists that evidence of the January 2020 heroin and fentanyl was not admissible to prove "lack of mistake." Further, Appellant contends that the trial court misapplied the *res gestae* exception because evidence of the controlled buy of methamphetamine, and evidence of the heroin and fentanyl recovered from 51 East Garrison Street, were unnecessary to explain police action. Appellant insists that the true purpose of the evidence was simply to establish that he was a drug dealer, which is what Rule 404(b) is designed to prohibit. Finally, Appellant claims that the court's cautionary instruction was inadequate to address the actual prejudice created by the testimony. Appellant concludes

the court's admission of this evidence was improper, and this Court must grant relief. We disagree.

Our standard of review of a trial court's admission or exclusion of evidence is well established and very narrow:

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

*Commonwealth v. Montalvo*, 604 Pa. 386, 403, 986 A.2d 84, 94 (2009), *cert. denied*, 562 U.S. 857, 131 S.Ct. 127, 178 L.Ed.2d 77 (2010) (internal citations and quotation marks omitted). "[A] discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusion." *Commonwealth v. O'Brien*, 836 A.2d 966, 968 (Pa.Super. 2003), *appeal denied*, 577 Pa. 695, 845 A.2d 817 (2004) (internal citation and quotation marks omitted).

Pennsylvania Rule of Evidence 404(b) provides as follows:

**Rule 404. Character Evidence; Crimes or Other Acts**

\* \* \*

**(b) Other Crimes, Wrongs or Acts.**

(1) *Prohibited Uses*. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

- 11 -

(2) *Permitted Uses*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).

As our Supreme Court has explained:

Evidence of one crime is generally inadmissible against a defendant being tried for another crime. ***Commonwealth v. Peterson***, 453 Pa. 187, 307 A.2d 264, 269 (1973). "[W]hile generally not admissible to prove bad character or criminal propensity," evidence of crimes, wrongs, or other acts "is admissible when proffered for some other relevant purpose so long as the probative value outweighs the prejudicial effect." [***Commonwealth v. Boczkowski***, 577 Pa. 421, 846 A.2d 75, 88 (2004)]; ***see also*** Pa.R.E. 404(b). Permissible purposes to admit other bad acts evidence include "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," subject to the court's weighing of the probative value and the potential for unfair prejudice against the defendant. Pa.R.E. 404(b)(2).

***Commonwealth v. Crispell***, 648 Pa. 464, 494, 193 A.3d 919, 936 (2018).

Importantly:

While Rule 404(b)(1) gives way to recognized exceptions, the exceptions cannot be stretched in ways that effectively eradicate the rule…. To preserve the purpose of Rule 404(b)(1), more must be required to establish an exception to the rule—namely a close factual nexus sufficient to demonstrate the connective relevance of the [other] bad acts to the crime in question[.]

***Commonwealth v. Sami***, 243 A.3d 991, 999 (Pa.Super. 2020) (emphasis in original) (internal citations omitted). "Our Supreme Court has consistently recognized that admission of distinct crimes may be proper where it is part of

- 12 -

the history or natural development of the case, *i.e.*, the *res gestae* exception." **Commonwealth v. Brown**, 52 A.3d 320, 326 (Pa.Super. 2012) (citations omitted). This exception permits introduction of evidence of other crimes to allow the complete story to be told. **Commonwealth v. Williams**, 586 Pa. 553, 580, 896 A.2d 523, 539 (2006), *cert. denied*, 549 U.S. 1213, 127 S.Ct. 1253, 167 L.Ed.2d 88 (2007). **See also Commonwealth v. Lark**, 518 Pa. 290, 303, 543 A.2d 491, 497 (1988) (explaining that "the '*res gestae*' exception to the general proscription against evidence of other crimes, is also known as the 'complete story' rationale, *i.e.*, evidence of other criminal acts is admissible 'to complete the story of the crime on trial by proving its immediate context of happenings near in time and place'") (citations omitted).

Finally, we recognize that "[w]hen the trial court admits evidence of a defendant's other bad acts, 'the defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose.'" **Crispell, supra** at 495, 193 A.3d at 937 (quoting **Commonwealth v. Solano**, 634 Pa. 218, 129 A.3d 1156, 1178 (2015)). In addition, "a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendant is charged." **Commonwealth v. Becher**, 293 A.3d 1226, 1239-40 (Pa.Super. 2023) (citation omitted).

Instantly, at the pre-trial hearing, the court found that evidence of controlled buys, other than the ones leading to Appellant's arrest, were unduly

prejudicial, and it denied the Commonwealth's motion to admit that evidence. (*See* N.T. Hearing, 2/28/22, at 138). However, the court admitted evidence of the controlled buy that led to Appellant's arrest as it provided a fuller picture of how Appellant came to provide his statements to the arresting officer, and how law enforcement obtained Appellant's two cell phones, one of which police used to connect Appellant to the sale of the drugs that killed Victim.

The trial court stated that it provided cautionary instructions at trial, both immediately after Trooper Deangles testified and at the conclusion of trial. The trial court explained:

> After Trooper Deangles completed his testimony, [the] court provided the jury with a curative instruction wherein they were informed that they could not take this information as evidence of Appellant's character. (N.T. Trial, 3/3/22, at 246-48). Rather, the jury was instructed that they could only consider this evidence as an indication that there was no mistake as to the transaction between Appellant and Victim. (*Id.*) This information could also be used to grasp the full picture of law enforcement's investigation. (*Id.*) After this curative instruction was provided, [the] court explicitly asked defense counsel if it was sufficient: "Court: [Counsel], anything you want to supplement or address with that at this time? A: No. I think that's sufficient, Your Honor." (*Id.* at 248).

(Trial Court Opinion at 22) (unnecessary capitalization omitted; record citation formatting provided).

We cannot say that the trial court's admission of evidence related to the controlled buy leading to Appellant's arrest, and the recovery of his cell phones, was an abuse of its discretion. Rather, this evidence helped establish the chain of events that led to the arrest of Appellant and led police to

Appellant's cell phone, which connected him to the drug delivery resulting in the death of Victim. The trial court was not required to sanitize the trial to eliminate this unpleasant fact. **See Belcher, supra**. Furthermore, whether the Commonwealth had conducted a chemical analysis of the heroin and fentanyl mixture does not affect the admissibility of the evidence. The court was well within its discretion to admit the evidence under the *res gestae* exception regardless of whether the chemical makeup of the heroin/fentanyl was the same or not. Finally, we agree with the trial court that Appellant waived any objection to the cautionary instruction provided by failing to object before the trial court at the time the court issued its instruction. **See** Pa.R.A.P. 302(a). Ultimately, we see no reason to disrupt the court's evidentiary ruling under these circumstances. **See Montalvo, supra**. Appellant's second issue is meritless.

In his third issue, Appellant contends that the trial court erred when it precluded him from questioning Ms. Terri-Lynn Jasinski, the mother of Victim's friend Luke Jasinski, about other drug dealers known to Luke. Appellant insists that pursuant to **Commonwealth v. Yale**, 665 Pa. 635, 249 A.3d 1001 (2021), he was entitled to present evidence of a third-party having committed the crime. Appellant argues that the court's ruling foreclosed him from pursuing a defense that another individual was responsible for the killing and was an abuse of the court's discretion. We disagree.

To be admissible, evidence must be relevant:

Pennsylvania Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. Building upon this definition, Rule 402 provides, in full, as follows: "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Thus, while the general rule of the admissibility of relevant evidence is subject to various exceptions, the rule that irrelevant evidence is not admissible is categorical. Accordingly, "[t]he threshold inquiry with admission of evidence is whether the evidence is relevant." **Commonwealth v. Collins**, 585 Pa. 45, 888 A.2d 564, 577 (2005); **Commonwealth v. Treiber**, 582 Pa. 646, 874 A.2d 26, 32 (2005); **Commonwealth v. Robinson**, 554 Pa. 293, 721 A.2d 344, 350 (1998).

**Commonwealth v. Cook**, 597 Pa. 572, 602, 952 A.2d 594, 612 (2008).

In addition, we note that a trial court has broad discretion to limit the scope of cross-examination, and such rulings will not be reversed absent an abuse of discretion. **Commonwealth v. Birch**, 532 Pa. 563, 566, 616 A.2d 977, 978 (1992). Notably, the trial court "cannot allow cross-examination to become a fishing expedition, where the examiner may ask questions based on a subjective hunch, or worse, based on nothing at all." **In Int. of M.M.**, 653 A.2d 1271, 1277 (Pa.Super. 1995), *aff'd*, 547 Pa. 237, 690 A.2d 175 (1997).

Instantly, Appellant asked Ms. Jasinski at trial whether Luke "was hanging out with other people you didn't know as well." (N.T. Trial, 3/2/22, at 114). The Commonwealth objected on the basis of relevance. Appellant suggested that the testimony was relevant because it showed that there were other potential dealers in Victim's life. (**Id.** at 115). The trial court sustained

the objection. In its Rule 1925(a) opinion, the trial court explained its ruling

as follows:

> The Commonwealth objected to this line of questioning on the basis that it was irrelevant. [The trial court] agreed and sustained the objection because this trial pertained to Appellant's sale of narcotics to Victim, which caused his overdose and death. Yet, this line of questioning was aimed at eliciting information about other dealers known to Luke— a completely irrelevant inquiry. As such, this question was clearly not relevant as to the issue of whether or not Appellant provided illicit substances to Victim, causing his death. As such, this claim is completely without merit.

(Trial Court Opinion at 19).

Upon review, we see no abuse of discretion in the court's evidentiary

ruling. **See Montalvo, supra**. There was no evidence at trial that Victim had

received the drugs from any other potential dealers. Further, we agree with

the trial court that the question posed to Ms. Jasinski, concerning whether

Luke had any other potential drug dealers in his life, is completely irrelevant

to whether Appellant dealt drugs to Victim, causing his death.[6] Thus,

---

[6] Appellant's reliance on **Yale** is misplaced. In that case, our Supreme Court clarified the appropriate standard for the admission of evidence of "third person guilt" when offered by a criminal defendant to show he was not the perpetrator of the crime charged. The **Yale** Court held that "[t]he prejudice-deterring Rule 404(b)(2) standards" did not apply to a defendant proffering evidence of third person guilt. **Yale, supra** at 672-73, 249 A.3d at 1023. Rather, the Court held: "Third person guilt evidence is admissible if it is relevant, not otherwise excludable, and surmounts the disqualifying considerations of Pa.R.E. 403." **Id.** Here, the trial court decided that the testimony Appellant sought to elicit from Luke's mother did not meet the relevancy threshold to be admissible. The court did not misapply Rue 404(b) in contravention of **Young**.

- 17 -

Appellant's third issue merits no relief.

In his fourth issue, Appellant contends that the trial court erred when it admitted and published to the jury an animated depiction of the purported paths and locations of the cell phones in possession of Appellant and Victim on November 12, 2019. Appellant claims that the exhibit did not accurately depict the actual phone location data—which was a potential radius around a cell phone tower—but presented the evidence as a map of exactly where Appellant and Victim were on November 12, 2019. Appellant insists that the power point animation was not being offered for what it was claimed to be, in violation of Rule of Evidence 901(a). Appellant further argues that because the exhibit was the final piece of evidence admitted at trial, it was uniquely prejudicial to Appellant, and should not have been presented to the jury. Appellant concludes the court abused its discretion in admitting the evidence, and this Court must grant relief. We disagree.

Our Supreme Court has explained that a computer generated animation may be admissible as demonstrative evidence if it: "(1) is properly authenticated pursuant to Pa.R.E. 901 as a fair and accurate representation of the evidence it purports to portray; (2) is relevant pursuant to Pa.R.E. 401 and 402; and (3) has a probative value that is not outweighed by the danger of unfair prejudice pursuant to Pa.R.E. 403." *Commonwealth v. Serge*, 586 Pa. 671, 685, 896 A.2d 1170, 1178-79 (2006).

> "The requirement of authentication or identification as a
> condition precedent to admissibility is satisfied by evidence

sufficient to support a finding that the matter in question is what its proponent claims." Pa.R.E. 901(a). Demonstrative evidence may be authenticated by testimony from a witness who has knowledge "that a matter is what it is claimed to be." Pa.R.E. 901(b)(1). Demonstrative evidence such as photographs, motion pictures, diagrams, and models have long been permitted to be entered into evidence provided that the demonstrative evidence fairly and accurately represents that which it purports to depict. *See Nyce v. Muffley*, [384 Pa. 107, 119 A.2d 530 (1956)].

*Id.* at 682, 896 A.2d at 1077.

Instantly, the trial court explained its decision to admit the evidence as follows:

Appellant claims this PowerPoint was offered as direct evidence of the locations of the cellular devices in the possession of Victim and of Appellant, when it was in fact merely demonstrative. Clearly, this argument is without merit. The Commonwealth questioned Detective Hanks extensively about his methods for plotting these data points. When discussing how this GPS information is obtained and how it was represented on the slides, Detective Hanks stated, "we use the pie sector of a shape to represent the direction the antenna is facing. It's a visual aid only." (N.T. Trial, 3/3/22, at 26). Moreover, throughout Detective Hanks' entire testimony, he emphasizes the locations as "approximate." For example, in referencing when a text message was received on [Victim's] cell phone, Detective Hanks stated, "[a]t the time the question was asked, [Victim's] phone was utilizing antennas that are facing the American Heritage Bank in Perkasie." (*Id.* at 35). Detective Hanks did not state that [Victim] was at the bank, but that his phone was utilizing antennas in that area, emphasizing how the data was interpreted, not using it to assert facts. Additionally, the PowerPoint also differentiated location data with dots and triangles, with a dot designating an exact location pinpoint and a triangle indicating the location to be a more approximate designation, referenced as an "interpolated event." (*Id.* at 32). Therefore, this exhibit was utilized by the Commonwealth as a demonstration to help present data (the cell phone text messages, the

timeline in which messages were sent and received, and the approximate location of the phones at these times) in a more comprehensive way to the jury, but it was not used as direct evidence of Appellant's participation in the crimes as alleged.

(Trial Court Opinion at 24-25) (record citation formatting provided).

We agree with the court's analysis. The data used to generate the demonstrative aid was properly authenticated and Detective Hanks, who was qualified as an expert in cell site location, explained that the animation depicted an approximate designation of the location of the cell phone based on the location of cell towers used by the phone while calls were placed. (**See** N.T. Trial, 3/3/22, at 17-19, 24-25). Also, the animation was relevant in that it helped the Commonwealth present the evidence of the approximate location of the phones during the timeline of events.

Finally, the animation's probative value was not outweighed by the danger of unfair prejudice. Detective Hanks made clear throughout his testimony that the locations were approximate. The court also instructed the jury that although the cell phone captioned as belonging to Appellant was found in his possession, it was up to the jury to determine whether it was his phone or not. (N.T. Trial, 3/3/22, at 13-14).[7] Therefore, we conclude that the trial court did not abuse its discretion when it found that the animation

---

[7] Appellant did not object to the court's instruction. (**See id.** at 14).

met the requirements for admission as demonstrative evidence. *See Serge, supra*. *See also Montalvo, supra*. Appellant's fourth issue is meritless.

In his fifth issue, Appellant contends that the trial court erred when it denied his motion to suppress evidence from two cell phones that were seized from him, and to suppress the inculpatory statements he made to law enforcement after his arrest. Appellant claims he was coerced to consent to the search and to make statements because Trooper Deangles told Appellant that he would withhold charges against him if he cooperated with police. Specifically, Appellant maintains that Trooper Deangles informed Appellant that if he cooperated, the trooper would work with the district attorney's office about not charging Appellant. Appellant argues that he cooperated with the police during the interview by giving inculpatory statements, access to his cell phones, and providing the names of two other individuals involved in dealing drugs. Appellant argues his consent to search the phones and his inculpatory statements were invalid under these circumstances. We disagree.

Preliminarily, we note that when a defendant relies on an unconditional promise of non-prosecution by a prosecutor, "the principle of fundamental fairness that undergirds due process of law in our criminal justice system demands that the promise be enforced." *Commonwealth v. Cosby*, ____ Pa. ____, ____ 252 A.3d 1092, 1131 (2021). Pennsylvania law is clear that "discretion to file criminal charges lies in the district attorney" not the police investigating the case. *Commonwealth v. Stipetich*, 539 Pa. 428, 430, 652

- 21 -

A.2d 1294, 1295 (1995). "[I]n certain cases, police can obtain useful information from a suspect in return for a promise not to prosecute. In such cases, police are certainly free to obtain the district attorney's consent to a non-prosecution agreement, so that the agreement will not be an unauthorized one." *Id.* at 431, 652 A.2d at 1295.

Here, Appellant does not argue that the district attorney promised not to prosecute him. Rather, he contends that Trooper Deangles, the investigating officer, promised that if Appellant cooperated with the investigation, he would not be prosecuted. Because Appellant did not rely on an "unconditional promise of non-prosecution" made by the district attorney, he is not entitled to enforcement of any such promise. *See Cosby, supra*; *Stipetich, supra*.

Against this backdrop, we initially turn to the validity of Appellant's consent to search his cell phones. A search conducted without a warrant is constitutionally impermissible unless an established exception applies. *Commonwealth v. Ginnery*, 293 A.3d 624 (Pa.Super. 2023). One such exception is for a consensual search, which requires an "assessment of the constitutional validity of the citizen/police encounter giving rise to the consent, and the voluntariness of the consent given." *Commonwealth v. Caban*, 60 A.3d 120, 127 (Pa.Super. 2012), *overruled on other grounds by In re L.J.*, 622 Pa. 126, 79 A.3d 1073 (2013) (citation omitted). Valid consent is "the product of an essentially free and unconstrained choice—not the result of

duress or coercion, express or implied, or a will overborne—under the totality of the circumstances." ***Commonwealth v. Neysmith***, 192 A.3d 184, 187 (Pa.Super. 2018), *appeal denied*, 650 Pa. 314, 200 A.3d 4 (2019), *cert. denied*, 139 S.Ct. 2640, 204 L.Ed.2d 287 (2019). Notably, "a decision to consent is not rendered involuntary merely because it is induced by a desire to avoid the possibility of a well-founded prosecution." ***Commonwealth v. Rickabaugh***, 706 A.2d 826, 835 (Pa.Super. 1997), *appeal denied*, 558 Pa. 607, 736 A.2d 603 (1999) (quoting ***Commonwealth v. Clark***, 516 Pa. 599, 606, 533 A.2d 1376, 1379 (1987)).

Instantly, law enforcement discovered the cell phones in question when officers searched Appellant incident to his arrest after his participation in the controlled buy of methamphetamine. After police transported him to police barracks, Appellant signed a consent form for the search of the cell phones and provided his passcode to access them.

The trial court noted that "[t]his consent form, which Appellant read and signed, specifically provided that he was allowing for the search of both cell phones. Appellant gave no indication that he did not understand the consent form, nor did he indicate that he signed the form involuntarily." (Trial Court Opinion at 15). The court explained that it denied the motion to suppress evidence from the phones because there was no indication that Appellant had not voluntarily signed the form.

The record supports the trial court's determination. Although Appellant contends that he was motivated to consent to the search in the hope that he would avoid prosecution, such motivation does not necessarily render his consent involuntary. *See Rickabaugh, supra*. Appellant signed a written consent form for the search of the cell phones, which said nothing about non-prosecution in exchange for Appellant's consent to search. Further, the record belies Appellant's claim that Trooper Deangeles promised not to prosecute Appellant in exchange for his cooperation. Rather, the record indicates that in exchange for Appellant's cooperation, the trooper agreed to contact the District Attorney about withholding the filing of some charges in the separate drug case pending in Northampton County, conditioned on Appellant's physical cooperation if Appellant was released from prison. Ultimately, Appellant was not released, so the trooper declined to withhold filing charges in the Northampton County case. Under these circumstances, Appellant's claim that the search of the cellphones was illegal is meritless.

Regarding Appellant's inculpatory statements, "[a] confession obtained during a custodial interrogation is admissible where the accused's right to remain silent and right to counsel have been explained and the accused has knowingly and voluntarily waived those rights." *Commonwealth v. Jones*, 546 Pa. 161, 178, 683 A.2d 1181, 1189 (1996). Our Supreme Court has explained that the voluntariness of a confession "is determined by considering the totality of the circumstances." *Commonwealth v. Templin*, 568 Pa. 306,

314, 795 A.2d 959, 964 (2002). "In determining voluntariness, the question is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess." *Id.* at 317, 795 A.2d at 966 (citations and internal quotation marks omitted). Significantly, a promise of leniency in prosecution does not negate the voluntariness of a confession, where the defendant was fully apprised of and expressly waived his *Miranda*[8] rights before substantive questioning began. *Id.* at 318, 795 A.2d at 966.

Instantly, the trial court explained its denial of Appellant's motion to suppress his statements as follows:

> At the pre-trial hearing, [the trial] court had the opportunity to review bodycam footage and a recording of the statement provided by Appellant. Bodycam footage indicated that, at the scene of his arrest, Appellant was provided his *Miranda* warnings. (N.T. Hearing, 2/28/22, at 26-28; Exhibit CS-1). Appellant was then taken to the barracks, where he remained in custody and handcuffed, to provide a statement. Law enforcement brought Appellant into a room and informed him that he was being video and audio recorded. (N.T. Hearing, 2/28/22, at 31). Law enforcement then, for a second time, provided Appellant his *Miranda* warnings, verbally and in writing. (*Id.* at 31-32). Appellant acknowledged that: he understood his rights, he was waiving his right to an attorney, and he was willingly giving a statement to law enforcement. (*Id.* at 31-32; Exhibit CS-2). Trooper Deangeles also reminded Appellant that he did not have to answer any question he did not wish to answer, and if at any point he wanted to terminate the interview, he had the right to do so. (Exhibit CS-2). Appellant then went

---

[8] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

on to provide his statement. As such, with no indication of involuntary action or force from law enforcement, [the trial court] found that Appellant had validly waived his ***Miranda*** rights and that the statement was admissible….

(Trial Court Opinion at 15-16) (citation formatting provided; unnecessary capitalization omitted).

Under the totality of these circumstances, we agree that Appellant's statements to police were voluntary. Appellant was twice given his ***Miranda*** warnings and was aware of his right to remain silent. Although Appellant now contends that he was coerced into speaking with police based on Trooper Deangeles' alleged promises, any such assurances did not precede Appellant's waiver of his ***Miranda*** rights to render Appellant's confession involuntary. ***See Templin, supra***. Further, we reiterate that the trooper did not promise non-prosecution in exchange for Appellant's cooperation. Rather, the trooper agreed that he would talk to the District Attorney about withholding the filing of some charges in the separate drug case pending in Northampton County if Appellant was able to physically cooperate upon release from incarceration. Because Appellant was not released and could not physically cooperate, the charges were ultimately filed in Northampton County. Thus, Appellant's fifth issue merits no relief.

In his sixth issue, Appellant argues that the trial court erred when it admitted cell phone records from AT&T and the business record certifications accompanying them, because they were not properly authenticated. Specifically, Appellant claims that the electronic signature by the custodian of

the records from AT&T was insufficient to authenticate the records under Rule of Evidence 803(6). Appellant claims that the certification via an electronic signature, provided in the middle of trial, undermined the trustworthiness of such signature. Although Appellant is not suggesting that the Commonwealth generated a fake electronic signature, Appellant submits that the trial court's acceptance of the electronic signatures mid-trial as self-authenticating creates a slippery slope and would eviscerate the authentication requirements of Rule 803. Appellant concludes the court's admission of this evidence was improper, and this Court must grant relief.[9] We disagree.

"Hearsay" is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Pa.R.E. 801(c). Generally, hearsay testimony is inadmissible at trial. Pa.R.E. 802. Pennsylvania Rule of Evidence 803 provides exceptions to the hearsay rule, in pertinent part, as follows:

> **Rule 803. Exceptions to the Rule Against Hearsay–Regardless of Whether the Declarant Is Available as a Witness**
>
> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> \* \* \*

---

[9] In his brief, Appellant mentions that he did not receive proper notice of the records as they were admitted mid-trial. Because Appellant did not raise this particular argument before the trial court, however, it is waived. ***See*** Pa.R.A.P. 302(a) (stating: "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal").

**(6) Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all of these conditions are shown by the testimony of the custodia or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of the information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

Rule of Evidence 902 states, in relevant part:

**Rule 902.  Evidence That is Self-Authenticating**

The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:

\*    \*    \*

**(11) Certified Domestic Records of a Regularly Conducted Activity.**  The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with Pa.R.C.P. No. 76.  Before the trial or hearing, the proponent must give an adverse

party reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them.

Pa.R.E. 902(11).[10]

Instantly, Appellant objected at trial to the admission of Exhibit C-28, which was the response that the Pennsylvania State Police received from AT&T related to the legal process to obtain a disc containing the phone records, and admission of Exhibit C-29, which were the phone records themselves. (**See** N.T. Trial, 3/2/22, at 161). Appellant claimed that the exhibits did not fall under the business record exception to the rule against hearsay. The Commonwealth conceded that Exhibit C-29 concerning the phone records may have been incomplete and asked the court for some time to resolve the matter. The court granted a recess over lunch, after which the Commonwealth offered Exhibit C-30, which was a certificate of authenticity attesting that the records were true duplicates generated by AT&Ts electronic process, and that the process and system were verified to have functioned normally. The certificate was signed by Anthony Stuart, a legal compliance analyst who was familiar with the process used to store and create the record and whose signature was typed into the signature block at the bottom of the certificate. Appellant objected to the admission of Exhibit C-30, claiming that the typed

---

[10] Rule 902(12) pertains to certified foreign records of regularly conducted activity, so it is not applicable here. **See** Pa.R.E. 902(12).

signature at the bottom was insufficient to satisfy the business record exception. (*See id.* at 165). The trial court overruled the objection and admitted the three exhibits.

In its Rule 1925(a) opinion, the trial court explained its ruling as follows:

> Cell phone records are often admitted under this exception to hearsay, so long as they are accompanied by a Certificate of Authenticity pursuant to Rules of Evidence 902(11) and 902(13) [related to certified records generated by an electronic process or system]. The records, as initially presented to th[e trial c]ourt, were inadmissible in that the Commonwealth inadvertently failed to attach the requisite Certificate of Authenticity. When th[e trial c]ourt reconvened after a brief recess, the Commonwealth provided Exhibit C-30, which included this Certificate, resolving the issue. Defense Counsel still objected, stating that the Certificate was signed electronically and therefore could not be trusted. Th[e trial c]ourt determined that an electronic signature was sufficient, because the custodian, Anthony Stuart, attested under penalty of perjury that the information was true and correct. (*See* Exhibit C-30); *see also* 28 U.S.C. § 1746. Further, electronic signatures are routinely used as common practice to verify important documents, including filing of taxes. As such, there is no reason to call into question the authenticity of this Certificate, and th[e trial c]ourt did not abuse its discretion nor commit an error of law in determining that these three (3) exhibits were admissible pursuant to the business records exception to hearsay.

(Trial Court Opinion at 19-20) (some record citations omitted).

We see no abuse of the court's discretion concerning this ruling. Appellant has not provided any authority stating that a signature on a certificate of authenticity is invalid simply because it was typed rather than written with a pen. Appellant concedes that there are no other issues with the certificate of authenticity and that there is no reason to believe that the

signature was not genuine. (**See** N.T. Trial, 3/2/22, at 165; Appellant's Brief at 38). Thus, we conclude that the trial court did not abuse its discretion in admitting the exhibits. **See Montalvo, supra**. Appellant's sixth issue is meritless.

In his seventh issue, Appellant argues the trial court abused its discretion and imposed a manifestly excessive sentence without properly considering the relevant sentencing factors. Appellant insists that the trial court imposed an aggravated range sentence that focused solely on the seriousness of the offense. Appellant claims the trial court also failed to consider the mitigating evidence, including character letters submitted on behalf of Appellant. Appellant insists that the court failed to properly consider his history and character, and imposed a sentence that was inconsistent with the facts of the case and in disregard of his rehabilitative needs. Appellant concludes the court abused its sentencing discretion and this Court should vacate and remand for resentencing. We disagree.

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right." **Commonwealth v. Phillips**, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009). Prior to reaching the merits of a discretionary aspects of sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify

sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa.Super. 2010) (quoting *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006)).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa.Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa.Super. 2015) (*en banc*) (quoting *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa.Super. 2011)). A substantial question is raised when an appellant alleges that his sentence is excessive because of the trial court's reliance on impermissible factors. *Commonwealth v. Allen*, 24 A.3d 1058, 1064-65 (Pa.Super. 2011).

Instantly, Appellant timely filed his notice of appeal and preserved his claim by including it in his post-sentence motion. Appellant also included a Rule 2119(f) statement with his brief. Further, Appellant's claim that the court relied on impermissible factors (namely, the seriousness of the offense) and imposed an aggravated range sentence while ignoring mitigating factors,

presents a substantial question as to the appropriateness of the sentence imposed. *See Allen, supra*. *See also Commonwealth v. Felmlee*, 828 A.2d 1105, 1107 (Pa.Super. 2003) (*en banc*) (stating substantial question is raised where appellant alleges sentencing court imposed aggravated range sentence without adequately considering mitigating factors). Thus, we proceed to address the merits of Appellant's claim.

This Court reviews discretionary sentencing challenges based on the following standard:

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. … [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Moury, supra* at 169–70 (quoting *Commonwealth v. Walls*, 592 Pa. 557, 926 A.2d 957 (2007)). "[A] court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa.Super. 2002), *cert. denied*, 545 U.S. 1148, 125 S. Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal

characteristics and his potential for rehabilitation." *Id.* When considering the propriety of imposing an aggravated range sentence, this Court has stated:

> [T]he guidelines were implemented to create greater consistency and rationality in sentencing. The guidelines accomplish the above purposes by providing a normal for comparison, *i.e.*, the standard range of punishment, for the panoply of crimes found in the crimes code and by providing a scale of progressively greater punishment as the gravity of the offense increases....
>
> The provision of a "norm" also strongly implies that deviation from the norm should be correlated with facts about the crime that also deviate from the norm for the offense, or facts relating to the offender's character or criminal history that deviates from the norm and must be regarded as not within the guidelines contemplation. Given this predicate, simply indicating that an offense is a serious, heinous or grave offense misplaces the proper focus. The focus should not be upon the seriousness, heinousness or egregiousness of the offense generally speaking, but, rather upon how the present case deviates from what might be regarded as a "typical" or "normal" case of the offense under consideration.
>
> An aggravated range sentence...will thus be justified to the extent that the individual circumstances of [an appellant's] case are atypical of the crime for which [he] was convicted, such that a more severe punishment is appropriate.

*Commonwealth v. Fullin*, 892 A.2d 843, 848 (Pa.Super. 2006) (internal citation omitted).

Instantly, the trial court sentenced Appellant to 10 to 20 years of incarceration for DDRD and imposed no further penalty on the other counts. The court explained its sentence as follows:

> Appellant claims that [the trial c]ourt erred in sentencing him in the aggravated range without providing proper justification. This argument is meritless. First and

foremost, the sentencing guidelines, based on Appellant's prior record score, provided a standard minimum sentence range of not less than eight and a half (8.5) nor more than 10 (ten) years' incarceration for DDRD. [The trial c]ourt sentenced him to a term of incarceration of not less than ten (10) years. Although this minimum is technically above the standard range as provided by the sentencing guidelines, [the trial c]ourt opted not to impose any further penalty on the remaining counts, as it could have for criminal use of a communication facility and involuntary manslaughter. Had [the trial c]ourt imposed sentences in the standard range on these other two counts, and run the sentences consecutively, Appellant could have received a [greater sentence].

Further, Appellant claimed that [the trial c]ourt focused improperly on the seriousness of the crime and solely focused on what the legislature intended insofar as making DDRD a serious offense. However, this assertion is factually incorrect. [The trial c]ourt clearly stated on the record its reasoning for handing down such sentence. [The c]ourt considered the impact on Victim and his family having lost someone so young. (N.T. Sentencing, 6/27/22, at 9). [The c]ourt also considered the larger impact in that this form of drug use continues to plague our communities, Appellant was aware of this fact, and he continued to financially support himself by selling these lethal substances. (*Id.*) In consideration of Appellant's drug use history, however, [the trial c]ourt recommended that Appellant have the opportunity to serve his sentence in a therapeutic community. (*Id.* at 10).

(Trial Court Opinion at 27-28) (record citation formatting provided).

The record confirms the court properly balanced Appellant's circumstances with the severity of the offense and the need to protect the public. The court considered letters from Victim's family as well as letters in support of Appellant. The court further considered Appellant's family history as well as his statement at sentencing where he expressed remorse for

Victim's death. The court also noted that Appellant continued to deal drugs after this incident. On this record, we discern no abuse of the court's sentencing discretion. *See Fullin, supra*.

In his final issue, Appellant challenges the sufficiency of the evidence for each of his convictions. First, Appellant alleges that the evidence was insufficient to support his conviction for DDRD. Appellant asserts that the Commonwealth failed to present sufficient evidence that a heroin sale occurred between Victim and Appellant because Luke Jasinski testified that he did not see Victim either buy or use heroin on the date of his death. Likewise, Appellant claims that the evidence was insufficient to support his conviction for PWID, because Luke testified that he did not see Victim purchase heroin from Appellant, nor did he observe Victim possess or ingest heroin. Additionally, Appellant insists that the testimony of Detective Hanks failed to establish that Appellant was present at Harbor Freight. Third, Appellant claims that the evidence was insufficient to support his conviction for involuntary manslaughter in the absence of evidence that Appellant sold the heroin to Victim. Fourth, Appellant claims that the evidence was insufficient to establish his conviction for criminal use of a communication facility where the Commonwealth failed to establish that Appellant and Victim engaged in a transaction for the sale of heroin. Appellant argues that the phone numbers attributed to Appellant and Victim were registered to different individuals, and the content of the text messages do not refer to the sale of heroin. Lastly,

Appellant complains the evidence was insufficient to establish his conviction for REAP, in the absence of evidence that a transaction for the sale of heroin occurred between Appellant and Victim. Appellant concludes the Commonwealth presented insufficient evidence to sustain each of his convictions, and this Court must grant relief. We disagree.

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Carr*, 227 A.3d 11, 19 (Pa.Super. 2020) (quoting *Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa.Super. 2014)). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Wallace*, 244 A.3d 1261, 1273-74 (Pa.Super. 2021).

The offense of DDRD requires that the Commonwealth prove that a defendant "intentionally administers, dispenses, delivers, gives, prescribes,

sells or distributes any controlled substance...and another person dies as a result of using the substance." 18 Pa.C.S.A. § 2506(a).

Instantly, the trial court addressed the sufficiency of the evidence to support the DDRD conviction as follows:

> In this matter, the Commonwealth presented evidence indicating that: Appellant and Victim texted on November 12, 2019, and Victim asked if he could purchase "70." Victim and a phone associated with Appellant then established that they would meet at Harbor Freight in Quakertown, Bucks County, Pennsylvania. (Exhibit C-61). A download of the phone associated with Appellant depicted photographs of tools available for sale at Harbor Freight around the same time he agreed to meet Victim. In one photograph of the tool display, Appellant's reflection is visible in the glass. (Exhibit C-46). After the two...met, Victim sent a message to the phone associated with Appellant stating: "[t]hat was 70 right? I'm just double checking." (Exhibit C-61). To which Appellant responded: "[y]es u got .40 in weight a bundle is .25 for 50 dollars." (**Id.**)
>
> At trial, Luke's testimony corroborated this timeline wherein he stated that, after he took Victim to the bank so he could withdraw cash, they drove near the Harbor Freight in Quakertown. Once they arrived in the Harbor Freight's parking lot, Victim left Luke's vehicle stating he was meeting his "guy" and returned shortly thereafter. The two...then went to a nearby park where they ingested heroin. The next morning a passerby discovered Victim, deceased. After an autopsy, the Pathologist concluded the cause of Victim's death was an overdose of fentanyl/heroin. Therefore, the Commonwealth presented sufficient evidence to establish both elements of this offense: first, that Victim purchased a controlled substance from Appellant and second, that Victim later overdosed and died after ingesting said substance.

(Trial Court Opinion at 9-10). Viewed in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that the

Commonwealth presented sufficient evidence that Appellant sold heroin/fentanyl to Victim, and that Victim died after using the heroin/fentanyl to sustain his DDRD conviction. *See* 18 Pa.C.S.A. § 2506(a); *Carr, supra*.

An individual is guilty of PWID if he possesses an illegal substance with the intent to distribute it. 35 P.S. § 780-113(a)(30).

> Where the contraband a person is charged with possessing is not found on the person of the defendant, the Commonwealth is required to prove constructive possession. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. Our courts have held that constructive possession requires proof of the ability to exercise conscious dominion over the substance, the power to control the contraband and the intent to exercise such control.

*Carr, supra* at 19 (citations omitted).

Instantly, the trial court addressed the sufficiency of the evidence to support the conviction of PWID as follows:

> In this matter, the Commonwealth offered sufficient evidence supporting the assertion that Appellant possessed [heroin/]fentanyl and had the intention to distribute it, in this case to Victim, for financial gain. This assertion was supported by the messages between Victim and the phone associated with Appellant referenced above, eyewitness testimony, and cell tower location data. Thus, Appellant's claim as to this charge is without merit.

(Trial Court Opinion at 10-11). Viewed in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that the Commonwealth presented sufficient evidence to sustain Appellant's conviction for PWID. *See* 35 P.S. § 780-113(a)(30); *Carr, supra*.

"A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." 18 Pa.C.S.A. § 2504(a). Furthermore, it is well established that "[a]lthough the overwhelming majority of heroin users do not die from a single injection of the narcotic, it nevertheless is an **inherently dangerous drug and the risk of such a lethal result certainly is foreseeable**." ***Commonwealth v. Kakhankham***, 132 A.3d 986, 996 (Pa.Super. 2015) (citation omitted; emphasis added).

Instantly, viewed in a light most favorable to the Commonwealth as the verdict winner, the Commonwealth presented sufficient evidence to establish that Appellant caused the death of Victim by selling him heroin/fentanyl. The Commonwealth introduced evidence that Appellant and Victim communicated about purchasing heroin, Victim went to the bank to obtain money, and then Victim met Appellant at Harbor Freight. Thereafter, Appellant went to a park and died as a result of a heroin overdose. On this record, the evidence was sufficient to support Appellant's conviction for involuntary manslaughter. ***See*** 18 Pa.C.S.A. § 2504(a); ***Carr, supra***.

A person is guilty of criminal use of communication facility when he "uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title

or under…[t]he Controlled Substance, Drug, Device and Cosmetic Act…." 18 Pa.C.S.A. § 7512(a).

Here, the Commonwealth presented evidence that Appellant communicated with Victim via text message and arranged to sell him heroin. Additionally, the Commonwealth presented evidence that Appellant and Victim arrived at the agreed upon location, and that Victim died later that day of a heroin overdose. Viewed in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient to demonstrate that Appellant used a communication facility to facilitate the sale of heroin. **See** 18 Pa.C.S.A. § 7512(a); **Carr, supra**.

A person is guilty of REAP, "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. The Crimes Code defines "recklessly" as follows:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).

Here, as discussed, the evidence presented at trial established that Appellant sold heroin/fentanyl to Victim. Viewing the evidence in the light

most favorable to the Commonwealth, we conclude that it was sufficient to establish that Appellant recklessly endangered Victim by selling him a substance that is known to cause overdose and death.  **See** 18 Pa.C.S.A. § 2705; **Carr, supra**.  **See also Kakhankham, supra**.  Appellant's final issue on appeal is meritless.  Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  3/25/2024